Pamela GREENE, Petitioner

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (HUSSEY COP-
PER, LTD.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 17, 2001.
Decided Sept. 11, 2001.
Reconsideration Denied Nov. 14, 2001.

Alexander J. Pentecost, Pittsburgh, for petitioner.

Michael A. Cohen, Pittsburgh, for respondent.

Before PELLEGRINI, Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

Opinion by Judge FRIEDMAN.

Pamela Greene (Claimant) petitions for review of the January 16, 2001 order of the Workers' Compensation Appeal Board (WCAB), which reversed the WCJ's decision to grant Claimant total disability benefits.[1] We reverse.

Claimant worked for Hussey Copper, Ltd. (Employer), a copper mill, as an assistant operator on a cleaning line. Claimant's duties included feeding coils of copper into a milling machine, which would clean the copper. On Saturday, April 13, 1996, Claimant went to work at midnight and worked a double shift until 4:00 p.m. on Sunday, April 14, 1996. She went home

---

1. The WCAB's January 16, 2001 order also affirmed the WCJ's award of specific loss benefits. However, that portion of the WCAB's order is not at issue here.

and took some cold medications, Nyquil, Motrin and Ducadan,[2] before going to sleep at 5:00 p.m. She got up at about 10:00 p.m. and went back to work for the 11:00 p.m. to 7:00 a.m. shift. At approximately 4:50 a.m. on Monday, April 15, 1996, Claimant reached into a machine to pull out a piece of coil that was stuck, and the machine severed her thumb. (WCJ's Findings of Fact, Nos. 3(a), 3(b).)

Claimant was taken to Sewickley Hospital, where she received Demerol for pain and Compazine for nausea. At that point, Claimant was sent to Allegheny General Hospital, where a physician performed surgery. Following surgery, Claimant underwent a drug test at the hospital because Employer requires the administration of a drug test following a work injury. Claimant had been in rehabilitation for drug use in the past and had smoked marijuana three weeks prior to her work injury, but she was not under the influence of any illegal drug at the time of the injury. Nevertheless, a few weeks after the work injury, Employer notified Claimant that it was terminating her employment because the Allegheny General Hospital drug test indicated that she tested positive for several controlled substances. (WCJ's Findings of Fact, Nos. 3(c)–3(e), 4(b); see R.R. at 339.)

On or about May 31, 1996, Claimant filed a claim petition alleging that she sustained a work-related injury to her right hand and right thumb. Employer filed an answer denying Claimant's allegations, and hearings were held before the WCJ.

After considering the evidence presented at the hearings, including the drug test results, the WCJ accepted the testimony of Claimant and her medical expert and rejected the testimony of Employer's lay witnesses to the extent that their testimony was inconsistent with Claimant's testimony. The WCJ found that Claimant was *not* in violation of Employer's drug policy at the time of her work injury. The WCJ rejected the drug test results as conclusive evidence that Claimant violated Employer's drug policy because Employer failed to present a witness qualified to render an opinion as to whether the positive drug test results were due to the drugs administered to Claimant at the hospital.[3] Thus, the WCJ awarded Claimant total disability and specific loss benefits. (WCJ's Findings of Fact, Nos. 1–2, 4(d), 14–16, 19–20.)

Employer filed an appeal with the WCAB, which reversed the WCJ's award of total disability benefits because the drug test results rejected by the WCJ indicated that Claimant had marijuana in her system on the day of the work injury in violation of Employer's drug policy.[4] (WCAB's op. at 7; see R.R. at 364–65.) The WCAB concluded that Claimant's loss of wages was not a result of her work injury but, rather, was due to her termination from employment for a violation of Employer's

---

2. Claimant obtained the Ducadan from the security guard at Employer's nurse's station. (R.R. at 234.)

3. In a claim proceeding, where the claimant establishes a loss of earnings from a work-related injury and the employer alleges that the claimant's loss of earnings is the result of a post-injury involuntary discharge, the employer bears the burden of proof. *Vista International Hotel v. Workmen's Compensation*

*Appeal Board (Daniels)*, 560 Pa. 12, 742 A.2d 649 (1999).

4. The WCAB also stated that Claimant's admitted use of marijuana three weeks prior to the work injury was a violation of Employer's drug policy. (WCAB's op. at 7.) However, Claimant's use of marijuana three weeks prior to the work injury was not the basis for Employer's termination of Claimant's employment; therefore, it is irrelevant here.

drug policy. Claimant now petitions this court for review of the WCAB's decision.[5]

Claimant argues that: (1) the WCAB erred in reversing the credibility determinations of the WCJ; and (2) given the WCJ's credibility determinations, the record contains substantial evidence to support the WCJ's finding that Claimant was not in violation of Employer's drug policy at the time of her injury. We agree.

Section 423(c) of the Workers' Compensation Act[6] (Act) sets forth the WCAB's scope of review of a WCJ's decision, stating that the WCAB shall affirm a WCJ's adjudication unless it finds that it is not in compliance with section 422(a) and other provisions of the Act. Section 422(a) of the Act states that, when faced with conflicting evidence, a WCJ must adequately explain his or her reasons for rejecting competent evidence. 77 P.S. § 834.

■ Here, the WCJ explained that, faced with the positive drug test results and Claimant's conflicting testimony, he rejected the test results as conclusive evidence that Claimant violated Employer's drug policy because Employer failed to present a witness who was qualified to render an opinion as to whether the positive drug test results were due to the drugs administered to Claimant at the hospital. (WCJ's Findings of Fact, No. 4(d).) Indeed, the witness presented by Employer to testify about the drug test results testified as follows:

Q. Do you know if the medications she was put on in the hospital are the types of medications that she was tested for?

A. I'm not a toxicologist. I couldn't attest to what, in fact, was tested or not.....

Q. Sir, [with respect to] the drug policy [of Employer,] do they make exceptions .... if the positive test results are related to emergency medical care given to somebody?

A. .... [A]gain, I don't do the lab testing nor am I qualified to comment on what would impact, [and] what would not impact a positive test....

(R.R. at 142; 153–54.) Considering such testimony, the WCJ certainly had good reason to resolve the conflicting evidence in favor of Claimant. Thus, we conclude that the WCAB erred in reversing the WCJ based on the drug test results.

■ Having made this determination, we also conclude that Claimant's credible testimony constitutes substantial evidence to support the WCJ's finding that Claimant did not violate Employer's drug policy. Claimant testified that the only drugs she had taken within the twenty-four hour period prior to the drug test at Allegheny General Hospital were Nyquil, Motrin, Ducadan, Demerol and Compazine. (R.R. at 232–37.) In taking these medications, Claimant did not violate Employer's drug policy.[7]

Accordingly, we reverse.

## ORDER

AND NOW, this 11th day of September, 2001, the order of the Workers' Compensa-

---

5. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

6. Act of June 2, 1915, P.L. 736, *added by* section 18 of the Act of June 24, 1996, P.L. 350, 77 P.S. § 854.2.

7. Employer's witness testified that, if Claimant's testimony were true, Claimant probably would not have been fired. (R.R. at 154.)

tion Appeal Board, dated January 16, 2001 is hereby reversed.