**SHOP VAC CORPORATION,**
Petitioner

v.

**WORKERS' COMPENSATION
APPEAL BOARD (THOMAS),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 27, 2007.
Decided July 25, 2007.

Robert A. Eckenrode, Williamsport, for petitioner.

Jonathan E. Butterfield, Williamsport, for respondent.

BEFORE: COLINS, Judge, and COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Shop Vac Corporation (Employer) petitions for review from an Order of the Workers' Compensation Appeal Board (Board) to the extent it concludes Employer did not discharge Kendall Thomas (Claimant) for conduct tantamount to bad faith. We affirm.

Claimant sustained an injury in the course and scope of her employment on February 26, 2002. Employer issued a Notice of Temporary Compensation Payable (NTCP) on March 12, 2002 describing her work injury as a cervical strain.[1] She received weekly indemnity benefits of $331.00 based on an average weekly wage (AWW) of $367.90 per week. Claimant returned to work with Employer in July of 2002 but was laid off in December of 2002. She again returned to work at full duty in February of 2003. Employer terminated Claimant on May 22, 2003.

Prior to her work injury, Claimant maintained concurrent employment with White Deer, a drug and alcohol rehabilitation center. Following her termination of employment with Employer, she continued working part-time for White Deer. In December of 2003, she began working full time for this establishment. Claimant was fired from White Deer on August 11, 2004 following verbal confrontations with a fellow employee and with a patient.

Claimant filed a Reinstatement Petition on February 9, 2004 alleging her injury again caused a decrease in her earning power. On May 6, 2004, Claimant filed a Review Petition alleging the injury description contained in the NCP was materially incorrect and should be amended to reflect a herniated disc at C5–6. She further alleged that the AWW was incorrectly calculated as it does not include wages from her concurrent employment. Employer filed a Termination Petition on June 20, 2005 alleging Claimant was fully recovered from her work-related injury as of April 27, 2004.

By a Decision circulated June 24, 2005, the WCJ noted that both parties agreed that the injury description contained in the NCP was inaccurate and amended her injury description to include a herniation at C5–6. He further found that the AWW contained in the NCP was incorrect because it failed to reflect Claimant's concurrent wages at White Deer. Therefore, he granted Claimant's Review Petition. Nonetheless, the WCJ explained that he was unable to calculate the correct AWW based on the evidence of record. He determined that Claimant's termination from Employer was not a result of bad faith conduct on her part. He concluded, however, that Claimant's firing from White Deer was due to conduct tantamount to bad faith. Consequently, he granted Claimant's Reinstatement Petition in part and awarded partial disability benefits beginning May 22, 2003. He declined, however, to award total disability as of August 11, 2004. The WCJ determined that Employer failed to meet its burden of proving Claimant was fully recovered from her

---

1. Though not crucial to our adjudication, it is evident that this NTCP was converted into a Notice of Compensation Payable (NCP) by operation of law. Section 406.1(d) of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626, provides that when an employer is uncertain whether a claim is compensable or is uncertain of the extent of its liability under the Act, it may initiate compensation payments without prejudice and without admitting liability by issuing an NTCP. If, however, the employer does not file a Notice Stopping Temporary Compensation within the ninety day period during which temporary compensation is payable, it shall be deemed to have admitted liability and the NTCP shall be converted to an NCP. *Id.*

work-related injury. As such, he denied its Termination Petition.

■ Both parties appealed the WCJ's Decision to the Board which affirmed in an Order dated January 4, 2006. Employer appeals challenging only the WCJ's grant of Claimant's Reinstatement Petition, in part, and his award of ongoing partial disability.[2]

In support of her Petition, Claimant testified that she was injured in the course and scope of her employment as a forklift operator and stock chaser with Employer on February 26, 2002. According to Claimant, she had performed some strenuous activities during her shift and when she got off her forklift she felt something pop in her back. She explained that she had surgery for her herniated disc on March 21, 2002. She confirmed that she returned to light duty in July of 2002 and full duty in September of 2002. Claimant stated she was laid of in December of 2002. Claimant resumed working for Employer in February of 2003. She testified that Employer terminated her in May of 2003 for excessive absenteeism.

Claimant testified that the major causes of her absenteeism were headache and neck pain. She explained that she would get injections for her pain and that she had to be out for a couple of days after receiving them. Claimant agreed that the unexcused absence that immediately preceded her discharge was not related to her work injury. On that occasion, she had to go pick up her son from the police station.

Employer presented the testimony of Harry Vinton, its Safety Manager, who testified that Claimant was terminated for violating its attendance policy on May 22, 2003. He stated that company policy is to give oral, written, and final warnings prior to discharging an employee. According to Mr. Vinton, it takes three unexcused absences to get a warning. Mr. Vinton explained that if an individual misses work and submits a doctor's note, that day will not be counted as an unexcused absence.

The WCJ credited Claimant's testimony concerning the circumstances of her discharge from Employer. Specifically, he credited her testimony to the extent that her poor attendance prior to her termination with Employer was mostly the result of difficulties arising from her work-related injury. He credited Mr. Vinton's testimony in part, but rejected it to the extent it implies Claimant's absenteeism was unrelated to her injury. As a result of his credibility determinations, the WCJ found Claimant was not fired for bad faith conduct on her part and directed that she is entitled to partial disability.

On appeal, Employer argues that it maintained a written attendance policy that required proper documentation justifying an absence for it to be considered an excused absence. It contends that Claimant failed to provide written documentation following her absences. Thus, it asserts that regardless of whether the absences that led to her discharge were work-related, she was nonetheless terminated for her bad faith effort to comply with its attendance policy. Claimant counters that the evidence presented by Employer fails to definitively establish the basis for her discharge. She argues that it is unclear whether she was terminated for her failure to provide medical excuses for her absences, or, whether she was fired for continuing to miss days after

---

2. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Guthrie v. Workers' Compensation Appeal Board (Travelers' Club, Inc.)*, 854 A.2d 653 (Pa.Cmwlth.2004).

using up her sick leave that would have been chargeable to her whether or not she provided written documentation.

 A claimant seeking a reinstatement of suspended benefits has the burden of proving that the disability which gave rise to her original claim continues and that, through no fault of her own, her earning power is once again adversely affected by her disability. *Pieper v. Workmen's Compensation Appeal Board (Ametek–Thermox Instruments Div.)*, 526 Pa. 25, 584 A.2d 301 (1990). An employer may rebut a claimant's proof of loss of earnings by demonstrating "that suitable work was available or would have been available but for circumstances which merit allocation of the consequences of [a] discharge to the claimant, such as claimant's lack of 'good faith.'" *Vista Int'l Hotel v. Workers' Compensation Appeal Board (Daniels)*, 560 Pa. 12, 742 A.2d 649 (1999).

 A showing of a lack of good faith, or bad faith, on the part of the claimant, is not the same as the willful misconduct standard sufficient to deny unemployment compensation. *Virgo v. Workers' Compensation Appeal Board (County of Lehigh–Cedarbrook)*, 890 A.2d 13 (Pa.Cmwlth. 2005). If, however, an employer establishes willful misconduct, it has presented sufficient evidence to preclude a reinstatement of benefits. *Id.* at 19. Nonetheless, generally, some " 'bad faith' willful misconduct" on the part of the claimant that caused the discharge has to be established or benefits will be reinstated. *Id.* Bad faith is not established when an employee attempts to perform her job duties but is unable to satisfactorily perform them due to her work-related injury. *Stevens v. Workers' Compensation Appeal Board (Consolidation Coal, Co.)*, 563 Pa. 297, 760 A.2d 369 (2000); *See also Cryder v. Workers' Compensation Appeal Board (National City)*, 828 A.2d 1155 (Pa.Cmwlth.2003).

As we stated in *Virgo*, if an employer only shows that he or she "would if he or she could," then bad faith is not shown, and benefits should be reinstated. *Virgo*, 890 A.2d at 19. If, however, the employer shows that the claimant "could if he or she would, and didn't," bad faith is established and a claimant is not entitled to a reinstatement of benefits. *Id.*

 When an employer terminates a claimant for a violation of a company policy, it must present conclusive evidence that the claimant violated that policy in order to rebut any loss of earnings as being through no fault of her own. *Greene v. Workers' Compensation Appeal Board (Hussey Copper, Ltd.)*, 783 A.2d 883 (Pa. Cmwlth.2001). Whether a claimant is terminated for conduct tantamount to bad faith is a factual determination to be made by the WCJ. *Champion v. Workers' Compensation Appeal Board (Glasgow, Inc.)*, 753 A.2d 337 (Pa.Cmwlth.2000).

With this legal framework in mind, we must determine whether Claimant's termination was the result of willful misconduct, the standard in unemployment compensation cases, or the less strict bad faith standard.

 In unemployment compensation cases, the employer has the burden of demonstrating the claimant was terminated for willful misconduct. *McKeesport Hosp. v. Unemployment Compensation Board of Review*, 155 Pa.Cmwlth. 267, 625 A.2d 112 (1993). In a case involving a work rule violation, the employer must establish both the existence of a reasonable work rule and its violation. *See Owens v. Unemployment Compensation Board of Review*, 748 A.2d 794 (Pa. Cmwlth.2000) (holding a claimant was terminated for willful misconduct after failing to return a medical leave request as required by the employer in order to receive

an excused absence). If the employer proves the existence of the work rule, the reasonableness of the work rule, and the fact of its violation, the burden of proof shifts to the claimant to prove she had good cause for her actions. *Id.* at 798.

■ It should be noted that excessive absenteeism, in and of itself, may be considered willful misconduct. *McKeesport Hosp.*, 625 A.2d at 114. Once an employer makes out a prima facie case of willful misconduct of this nature, the burden shifts to the claimant to show good cause as justification for the conduct considered willful. *Id.* Illness is a good cause defense to a charge of willful misconduct due to excessive absenteeism. *Id.* Nonetheless, it is incumbent on the claimant to establish that illness was indeed the cause of her absenteeism. *Id.*

As noted above, Mr. Vinton testified that Claimant was terminated for violating Employer's attendance policy. He explained that it takes three unexcused absences to get a warning and that Claimant had received her oral, written, and final warnings prior to her ultimate discharge. He added that if an individual such as Claimant missed work, that day would not be counted as an unexcused absence so long as a medical excuse was provided. Thus, at first blush, it appears that pursuant to *Owens*, Employer has made out a prima facie case of willful misconduct and that the burden should be shifted to Claimant to establish she had good cause for violating the work rule. Nonetheless, at the August 10, 2004 hearing, upon redirect examination, Mr. Vinton testified as follows:

Q. When it's listed "RO sick,"[3] does that get listed on a Correction Action Report form if there's an accompanying medical excuse submitted?

A. The reason it would be on there is if there was an unexcused absence or no days—no sick days available.

Q. Okay, so it could be either no sick days or no medical excuse?

A. Correct.

(R.R. at 100a).

The following transpired on re-cross examination:

Q. No sick days available, does that mean she maxed out her sick days?

A. That's possible.

. . .

Q. And after that they cease to be excused?

A. If they ask for a sick day and they don't have any sick days, then it's unexcused.

(*Id.* at 100a–101a).

■ When read as a whole, Mr. Vinton's testimony, as suggested by Claimant, does not exclude the possibility that at least some of the unexcused absences that led to her termination were the result of her calling off without any sick days remaining as opposed to her failure to turn in medical excuses following her absences. Thus, while Employer's arguments on appeal focus on the violation of a work-rule, it cannot escape the fact that the law on excessive absenteeism also is also implicated in this matter. We reiterate that the WCJ credited Claimant's testimony that but for the day she missed work to pick up her son at the police station, the times she called off work were due to difficulties arising from her work-related injury. As an "illness" can be a good cause defense to a charge of willful misconduct due to ex-

---

**3.** Attached to Mr. Vinton's deposition is a "Corrective Action Report" that reflects six absence occurrences between March 24, 2003 and May 15, 2003. Beside five of the six absences is the designation "R/O." (R.R. at 104a).

cessive absenteeism, *McKeesport Hosp.*, we see no reason why debilitating pain from a work-related injury cannot serve as good cause as well. Viewing the evidence in a light most favorable to Claimant, we conclude she was not terminated for conduct tantamount to willful misconduct.[4]

■ For the same reason Claimant cannot be said to have been terminated for willful misconduct, the WCJ did not err in finding her discharge was due to conduct rising to the less strict level of bad faith. Consistent with *Champion,* whether a claimant was fired for bad faith conduct is an issue of fact. Based on his credibility determinations, the WCJ determined that the bulk of Claimant's absences from work were due to her pain from her work-related injury. Essentially, Claimant "would if she could." *Virgo* dictates that this is not bad faith sufficient to prevent a reinstatement of benefits.[5]

Upon review, we see no error in the WCJ's determination that Claimant was not fired for conduct tantamount to bad

faith. As Employer does not challenge the fact that Claimant continued to be hampered by her work-related injury through the date of her discharge, she has met her burden to establish that her benefits should be reinstated.[6] *Pieper.* As such, we affirm the Order of the Board.

## O R D E R

AND NOW, this 25th day of July, 2007, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

---

4. In reviewing a workers' compensation decision, we must view the evidence in a light most favorable to the party who prevailed before the WCJ. *Birmingham Fire Ins. Co. v. Workmen's Compensation Appeal Board (Kennedy)*, 657 A.2d 96 (Pa.Cmwlth.1995).

5. Employer contends that the Board, in affirming the WCJ's Decision, placed too much emphasis on Claimant's final unexcused absence whereupon she called off to pick her son up at the police station rather than looking at the cumulative effect of all of her absences. It adds that even if, in general, bad faith would not be found if a claimant calls off to tend to the exigent needs of a family member, she nonetheless failed to provide any documentation that would excuse this absence as required. Our review of the Board's Decision reveals that it did focus heavily on Claimant's final absence. Nonetheless, the Board did not focus on this absence exclusively. Moreover, caselaw suggests that Claimant may have had good cause for her absence from work on the day she called off to pick up

her son at the police station. *See Steth, Inc. v. Unemployment Compensation Board of Review*, 742 A.2d 251 (Pa.Cmwlth.1999)(holding that a claimant had good cause for an absence when she took off work to comfort her daughter following her grandmother's funeral). Because, for her other absences, Employer did not definitively establish that Claimant received unexcused absences for her failure to turn in medical notes following her absences as opposed to missing work due to her work-related injury without having any sick days remaining, we need not address whether, in general, bad faith may be found when a claimant fails to submit documentation in a situation such as this when an employer's policies requires as such. This is because the instant Employer's policy required multiple unexcused absences in order to warrant each stage of discipline.

6. Claimant, of course, as noted by the WCJ, is only entitled to partial disability as she was terminated from White Deer as a result of bad faith conduct.