# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Southeastern Pennsylvania    :
Transportation Authority     :
(SEPTA),                       :
                              :
                  Petitioner    :
                              :
                v.           : No. 107 C.D. 2017
                             : Submitted: June 9, 2017
Workers' Compensation Appeal  :
Board (Briscoe),        :
                              :
                Respondent   :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                      FILED:  January 29, 2018

Southeastern Pennsylvania Transportation Authority (SEPTA) (Employer) petitions for review of the December 29, 2016 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) granting the claim petitions filed by Nicole Briscoe (Claimant).  We affirm.

Claimant worked for Employer for thirteen years, most recently as a transit cashier at the Hunting Park South station.  On November 26, 2013, Claimant filed a claim petition alleging that she sustained a work injury to her left knee on September 1, 2013.  Employer filed a timely answer denying all material allegations. Employer discharged Claimant on January 17, 2014.

Claimant filed a second claim petition on February 26, 2014, alleging an injury in the nature of right carpal tunnel syndrome as of October 21, 2013. Claimant sought total disability benefits from January 17, 2014. Employer filed a timely answer, and the claim petitions were consolidated for hearings before the WCJ.

Claimant testified that she injured her knee at work on September 1, 2013.[1] Claimant said that she was using the employee restroom when she noticed a cockroach on her shirt; she panicked, thrashed, and twisted around in the restroom stall. Afterward, she returned to work for the remainder of her shift. When Claimant awoke the next morning, she noticed a baseball-sized lump on her left knee and felt throbbing pain in the area. Claimant went to work, reported the injury to Employer, and completed an incident report. Employer referred Claimant to a medical provider and she underwent one physical therapy session, but Employer subsequently issued a notice of compensation denial. WCJ's Finding of Fact No. 2.

Regarding her alleged carpal tunnel injury, Claimant testified that as a transit cashier, she used her right hand to perform repetitive tasks for about seven-and-a-half to eight hours a day. Claimant stated that she first experienced radiating pain and numbness in her right arm at work during the summer and early fall of 2013. She reported these symptoms to Employer on November 12, 2013, and completed a second employee injury report. Claimant said that Employer referred her to panel providers for therapy, but the symptoms in her right wrist progressively worsened. Employer accommodated the symptoms in her right arm by switching her from a right-handed to a left-handed cashier booth. Claimant utilized this

_____

[1] Claimant testified at hearings held on January 16, 2014, and February 20, 2015, and in depositions taken on June 25, 2014, and July 30, 2014.

2

accommodation until her discharge on January 17, 2014. WCJ's Findings of Fact, Nos. 2-4.

Claimant also presented testimony from Michael R. McCoy, M.D., a board certified family practitioner who began treating Claimant on October 21, 2013, for both her knee and wrist symptoms. After reviewing Claimant's history and medical records and conducting a physical examination, Dr. McCoy diagnosed Claimant's left knee injury as a work-related sprain/strain, aggravation of a pre-existing degenerative joint disease, and a loose body. Dr. McCoy testified that Claimant has not yet recovered from these injuries. With respect to Claimant's wrist, Dr. McCoy stated that he observed positive testing at the carpal tunnel, irritability over the left ulnar nerve, decreased grip strength, and decreased sensation, indicating a right wrist sprain/strain and carpal tunnel syndrome. Dr. McCoy believed that cumulative repetitive stress related to Claimant's employment caused the carpal tunnel syndrome. He testified that Claimant remained partially disabled due to her wrist injury. WCJ's Finding of Fact No. 6.

Employer offered the deposition testimony of Dennis P. McHugh, D.O., a board certified orthopedic surgeon who conducted an independent medical examination (IME) of Claimant on April 2, 2014. Dr. McHugh interpreted Claimant's MRI films as indicating chronic degenerative changes in the left knee and a loose body that appeared well encapsulated in the popliteal tendon. He stated that the encapsulation of the loose body indicated the likelihood that Claimant's knee condition predated the work incident. Dr. McHugh further testified that Claimant displayed no residual effects of a potential work injury to her knee, she required no additional treatment for her knee, and she could return to work without restrictions. WCJ's Finding of Fact No. 9.

3

Employer also submitted the deposition testimony of Andrew Sattel, M.D., who conducted an IME on June 18, 2014. Dr. Sattel testified that the IME yielded clinically unremarkable results, other than a mildly positive Phalen's maneuver. Dr. Sattel disagreed with Dr. McCoy's diagnosis of work-related carpal tunnel syndrome, explaining that because Claimant's job duties varied, they were not sufficiently repetitive to pose a significant risk of developing carpal tunnel syndrome. He added that if Claimant's work activities caused the symptoms, the symptoms would have decreased after she stopped working but they have not. WCJ's Finding of Fact No. 10.

In rebuttal, Claimant offered additional testimony of Dr. McCoy, who stated he had continued to treat Claimant and that her condition had not improved. He reiterated his disagreement with Dr. Sattel and Dr. McHugh's assertions that Claimant had recovered, that her injuries were not work-related, and that the incident on September 1, 2015 did not cause the loose body in her knee. WCJ's Finding of Fact No. 7.

Additionally, Dr. McCoy testified that since his last deposition, Claimant had seen Dr. Davidoff, for injections to her right wrist, Dr. Todd Kelman an orthopedic hand surgeon, and Dr. Mandarino, for treatment of her left knee. Dr. McCoy stated that he relied on reports from Drs. Davidoff, Kelman, and Mandarino in concluding that Claimant had not fully recovered from her injuries. The WCJ sustained Employer's objections to the submission of the physicians' reports, but admitted Dr. McCoy's testimony regarding the medical history that Claimant gave to these providers. Dr. McCoy stated that during his most recent examination of Claimant's knee and wrist on January 12, 2015, he concluded that she remained symptomatic and disabled. WCJ's Finding of Fact No. 7.

4

With respect to the termination of her employment, Claimant described Employer's disciplinary point system and acknowledged that she was disciplined on multiple occasions between 2002 and 2012 due to attendance issues. Claimant said that she was disciplined for being late to work on May 12, 2013, and after proceeding through formal hearings, she was given a last chance agreement, which was dated and signed December 6, 2013. The agreement provided that Claimant was put on probation and that if any infractions were incurred during the probation period, Claimant would be subject to immediate termination. WCJ's Findings of Fact Nos. 2, 4.

Claimant also was late for work on June 4, 2013, which resulted in an accumulation of points supporting her discharge. During an informal hearing, Claimant explained that she was taking medication that made her drowsy, and she did not agree with the proposed discharge. At a subsequent formal hearing on September 18, 2013, Claimant did not contest the charges, and the hearing officer upheld her discharge. The last chance agreement Claimant signed on December 6, 2013, did not apply to the June incident, and Employer discharged Claimant on January 17, 2014, for violating the last chance agreement. Claimant agreed that under Employer's disciplinary point system, if she had accrued any points after signing the agreement she would have faced termination. She testified that since she had not accrued any additional points after signing the agreement, she was not discharged for cause. WCJ's Finding of Fact No. 5.

Stacey Richardson, Employer's Assistant Director of Station Operations, explained that under Employer's disciplinary system, employees accrue a particular number of points for different attendance violations, such as arriving late for a shift or calling off on the day of a shift. The system progressively penalizes

5

employees based on both the number of points they accrue and the amount of time between each violation. The final stage of the process involves a discharge with dignity status,[2] a last chance agreement, and arbitration. WCJ's Finding of Fact No. 11.

Richardson testified that Claimant was five minutes late to work on May 23, 2013, and two minutes late on June 11, 2013. She explained that the infractions were addressed through separate disciplinary proceedings. The May 2013 issue was resolved by way of the last chance agreement that Claimant signed on December 6, 2013. Following the June 2013 attendance violation, termination of Claimant's employment was recommended and Claimant did not challenge the charges. Richardson testified that Employer's termination of Claimant's employment on January 17, 2014, was based on her substandard attendance, in violation of the last chance agreement. Reproduced Record at 718a; WCJ's Finding of Fact No. 11.

The WCJ accepted Claimant's testimony as credible and persuasive, citing her forthright demeanor and the consistent medical histories she provided to the different physicians. The WCJ also found Dr. McCoy's testimony to be credible and persuasive and accorded greater weight to his testimony as Claimant's treating physician. The WCJ rejected the contrary opinions of Drs. McHugh and Sattel because they conflicted with Dr. McCoy's credible testimony and they each saw Claimant on only one occasion. Finally, the WCJ found Richardson's testimony not credible or persuasive concerning the reason for Claimant's discharge.

---

[2] An employee on discharge with dignity status may continue to work with pay until the final levels in the discipline process take place, which include a last chance agreement and arbitration. WCJ's Finding of Fact No. 11.

6

Based on those credibility determinations, the WCJ found that Claimant suffered a left knee strain/sprain, aggravation of a pre-existing degenerative joint disease, and a loose body in the left knee, caused by the September 1, 2013 work injury. The WCJ also found that Claimant suffered from right carpal tunnel syndrome as of October 21, 2013, due to the repetitive activities required by her employment. The WCJ determined that Claimant was not fully recovered from either work injury and that she was not discharged for cause. By order dated August 26, 2015, the WCJ granted the claim petitions and directed Employer to pay total disability benefits from January 17, 2014. Employer appealed to the Board, which affirmed.

On appeal to this Court,[3] Employer first argues that the WCJ erred in disregarding competent evidence that is inconsistent with Claimant's testimony. However, it is a fundamental precept of workers' compensation law that the WCJ is the ultimate arbiter of witness credibility and evidentiary weight and may reject the testimony of any witness in whole or in part. *Keystone Coal Mining Corp. v. Workers' Compensation Appeal Board (Wasnak)*, 756 A.2d 1200, 1202 (Pa. Cmwlth. 2000). Whether the record contains evidence to support findings other than those made by the WCJ is irrelevant; the critical inquiry is whether the findings made by the WCJ are supported by substantial evidence. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).[4]

---

[3] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.

[4] Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Republic Steel Corp. v. Workmen's Compensation Appeal*

7

Employer also asserts that the WCJ erred in crediting the medical testimony of Dr. McCoy because he "had an incomplete grasp of Claimant's medical situation and employment[.]" Employer's brief at 15. Employer complains that Dr. McCoy's opinion of Claimant's right hand injury was based on a less-than-thorough examination and that Dr. McCoy failed to consider Claimant's other daily activities, such as typing she did at home. Employer also cites specific portions of Dr. McCoy's testimony that are inconsistent with certain medical records and asserts that these inconsistencies render Dr. McCoy's testimony incompetent, equivocal, and insufficient as a matter of law.

We note that a medical expert's opinion is often based on his acceptance of a patient's history, the truthfulness of the patient's report of his subjective symptoms, and the accuracy of observations recorded in the patient's medical file. *Southeastern Pennsylvania Transportation Authority v. Workers' Compensation Appeal Board (Herder)*, 765 A.2d 414, 418 n.5 (Pa. Cmwlth. 2000). It is well settled that "[m]edical causation testimony is not rendered equivocal because it is based on the witness's assumption of the truthfulness of the information provided him for the purpose of forming his opinion." *Id.*; *McGraw-Edison/Power Systems Division v. Workmen's Compensation Appeal Board (Rendziak)*, 436 A.2d 706, 709 (Pa. Cmwlth. 1981). Such reliance does not render the expert's opinion on causation equivocal or otherwise incompetent if the supposed facts forming the basis of his opinion are established by competent evidence and accepted as fact by the WCJ. *Id.* Such is the case here, and we note again that "the WCJ's authority over

---

*Board (Shinsky)*, 421 A.2d 1060, 1062-63 (Pa. 1980). In performing a substantial evidence analysis, we must view the evidence in a light most favorable to the party that prevailed before the factfinder. *Hoffmaster*, 721 A.2d at 1155.

8

questions of credibility, conflicting evidence and evidentiary weight is unquestioned." *Minicozzi v. Workers' Compensation Appeal Board (Indust. Metal Plating, Inc.)*, 873 A.2d 25, 28 (Pa. Cmwlth. 2005); *Southeastern Pennsylvania Transportation Authority,* 765 A.2d at 417.

Employer also argues that the WCJ erred in relying on impermissible hearsay evidence, specifically, the opinions of Drs. Kelman, Mandarino, and Davidoff referenced during Dr. McCoy's deposition testimony. However, Pennsylvania courts have consistently held "as an exception to the hearsay rule that a medical witness may express an opinion based upon medical records of others even if those records were not introduced into evidence so long as they are the kind of records upon which the medical profession customarily relies in the practice of their profession." *Empire Steel Castings, Inc. v. Workers' Compensation Appeal Board (Cruceta)*, 749 A.2d 1021, 1026 (Pa. Cmwlth. 2000) (citing *Commonwealth v. Thomas*, 282 A.2d 693, 698-99 (Pa. 1971)). Dr. McCoy confirmed that the reports of the three physicians are the types of reports he regularly relies upon in his practice. Additionally, the WCJ noted that Dr. McCoy's medical opinions were based on both the reports of the three physicians as well as his own examinations of Claimant. Therefore, we reject Employer's assertion that the WCJ impermissibly allowed hearsay evidence into the record or that reliance on those records rendered Dr. McCoy's medical opinion incompetent or equivocal.

Employer further contends that the record is insufficient to support a determination of work-related disability where Claimant admitted that she was discharged for cause. An employer may rebut a claimant's evidence of work-related disability by showing that the claimant's loss of earnings is the result of a termination for misconduct unrelated to the work injury. *Vista International Hotel v. Workmen's*

9

*Compensation Appeal Board (Daniels)*, 742 A.2d 649, 654-57 (Pa. 1999); *Coyne v. Workers' Compensation Appeal Board (Villanova University)*, 942 A.2d 939, 945 (Pa. Cmwlth 2008). However, a claimant will be entitled to benefits if she is discharged for misconduct that took place prior to the work-related injury. *Coyne*, 942 A.2d at 946. Thus, in this claim proceeding, Employer bore the burden to prove that Claimant's loss of earnings was due to a discharge for post-injury misconduct. *Greene v. Workers' Compensation Appeal Board (Hussey Copper Ltd.)* 783 A.2d 883, 884 n.3 (Pa. Cmwlth. 2001).

Here, the WCJ rejected Richardson's testimony, found the timing of Claimant's discharge, which occurred after she filed her initial claim petition, to be suspect, and highlighted the fact that the June 2013 incident for which she was terminated occurred six months *before* she began her probationary period.[5] Therefore, Employer failed to demonstrate that Claimant's loss of earnings was unrelated to her work injuries.

Finally, Employer asserts that the WCJ failed to issue a reasoned decision as required by Section 422(a) of the Workers' Compensation Act (Act).[6] We disagree. "[A] decision is 'reasoned' for purposes of Section 422(a) if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. A reasoned decision is no more, and no less." *Daniels v. Workers' Compensation Appeal Board (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). To satisfy the reasoned decision requirements of Section 422(a) of the Act, a WCJ must set forth

---

[5] Employer argues that Richardson's account of the reasons for Claimant's termination was credible and supported by documentary evidence. We decline to revisit this credibility determination. *Keystone Coal Mining Corp.*

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §834.

10

the rationale for the decision by specifying the evidence relied upon and her reasons for accepting it. *Id.* at 1053; *Dorsey v. Workers' Compensation Appeal Board (Crossing Constr. Co.)*, 893 A.2d 191, 194-95 (Pa. Cmwlth. 2006). When conflicting evidence is presented, the WCJ must adequately explain the reasons for rejecting or discrediting competent evidence. *Daniels*, 828 A.2d at 1053.

In her decision, the WCJ provided specific reasons for either crediting or discrediting all medical and lay witness testimony. For example, the WCJ explained that she credited Claimant's testimony because Claimant testified in a forthright manner and provided consistent histories to her treating physicians. In rejecting Richardson's testimony, the WCJ noted that it was internally inconsistent. Contrary to Employer's implied suggestion, "Section 422(a) does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations. Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Dorsey*, 893 A.2d at 195 (citations omitted). Here, the WCJ articulated an objective basis for each of her credibility

rulings. We reject Employer's contention that the WCJ's decision was not reasoned under Section 422(a) of the Act.

Based on the foregoing, we affirm.

11

MICHAEL H. WOJCIK, Judge


Judge Fizzano Cannon did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Southeastern Pennsylvania :
Transportation Authority :
(SEPTA), :
:
              Petitioner :
:
          v. : No. 107 C.D. 2017
:
Workers' Compensation Appeal :
Board (Briscoe), :
:
         Respondent :

O R D E R

AND NOW, this 29th day of January, 2018, the order of the Workers'
Compensation Appeal Board, dated December 29, 2016, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge