· Jurisdiction relinquished.

**POLK CENTER/DEPARTMENT OF PUBLIC WELFARE and Phico Services, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (POCHRAN), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted June 7, 1996.
Decided Sept. 12, 1996.

---

Peter A. Pentz, for Petitioner, Polk Center/Department of Public Welfare.

Robert B. Woomer, for Respondent.

Before DOYLE and FLAHERTY, JJ., and LORD, Senior Judge.

DOYLE, Judge.

The Polk Center/Department of Public Welfare (Polk Center) appeals from an order of the Workmen's Compensation Appeal Board (Board) which vacated a decision by a Workers' Compensation Judge (WCJ) to suspend benefits for Rosemarie Pochran (Claimant). The Board's decision was based entirely on its conclusion that the WCJ lacked jurisdiction to hear Employer's suspension petition where Claimant was still receiving her full salary under Act 534.[1]

The relevant facts may be summarized as follows. Polk Center is a state mental facility operated under the auspices of the Department of Public Welfare (DPW). Claimant, a residential services aide, initially sustained a work-related injury when she was kicked in her right leg by a patient at Polk Center on May 23, 1991. On July 1, 1991, a notice of compensation payable was issued, entitling Claimant to benefits of $294.93 per week.

On January 24, 1994, Polk Center filed a suspension petition alleging that Claimant "was offered work within her physical limitations but unreasonably refused the job effective December 17, 1993." (WCJ's Decision at 3, Finding of Fact (F.F.) No. 1.) Although Claimant did not file a formal answer to the suspension petition, Claimant appeared with counsel at the hearings scheduled by the WCJ to contest the allegations raised by Polk Center.[2] In support of its suspension petition, Polk Center offered the testimony of Deborah Lee Myers, a personnel analyst for employer, and the deposition testimony of Dr. Frederic Jarrett, a board certified general and vascular surgeon. In rebuttal, Claimant testified on her own behalf and also offered the deposition testimony of her treating physician, Dr. James Houser.[3]

The WCJ accepted the testimony of Polk Center's witnesses over that of Claimant and Dr. Houser. Based on this credibility determination, the WCJ granted Polk Center's petition and ordered that Claimant's benefits be suspended effective December 17, 1993. In reaching his decision, the WCJ made the following pertinent Finding of Fact:

> [Y]our [WCJ] believes and finds as fact that the employer made a suitable job available for [C]laimant beginning December 17, 1993, which would have paid her wages at least equal to her average weekly wage, and that the claimant has failed to respond in good faith and has not made a good faith effort to return to work. In reaching these findings, I have accepted all

---

1. Act of December 8, 1959, P.L. 1718, *as amended*, 61 P.S. §§ 951–952. The substantive provisions of Act 534 are discussed *infra*, op. at 892. Whether Claimant was actually receiving Act 534 benefits at the time of the WCJ's decision in this case is not clear from the record and continues to be disputed by the parties on appeal.

2. After an initial hearing held on March 31, 1994, the WCJ granted Polk Center's request for a supersedeas, effective March 31, 1994, by an interlocutory order dated April 4, 1994.

3. Dr. Houser is board certified in internal medicine.

of the testimony of Dr. Jarrett and Deborah Myers, and much of the testimony of Dr. Houser, as credible and convincing; and have rejected most of the testimony of the [C]laimant as not credible and not worthy of belief. It is clear that the employer is willing to accommodate any and all restrictions for the claimant in order to return her to work, and the position they made available is a make-work job with no physical demands which merely requires the [C]laimant to be on the employer's premises and to answer an occasional telephone call. Having carefully observed the [C]laimant throughout the course of the three (3) hearings held in this case, I agree entirely with Dr. Houser's bottom line opinion that the [C]laimant is simply a person who has no interest whatsoever in returning to work and that there is no objective reason why she could not perform the position offered. Dr. Jarrett's credible and competent testimony provides a more than adequate foundation for me to find that the job is in fact suitable and that the [C]laimant is capable of performing same; and I adopt his opinion over Dr. Houser's rather weak opinion to the effect that the [C]laimant is to be deemed incapable merely because she says that she can't do it.

(WCJ's Decision at 3, F.F. No. 3.)

Claimant filed a timely appeal from the WCJ's decision to the Board in which she argued, for the first time, that the WCJ erred in suspending her benefits by not considering the fact that Claimant was receiving Act 534 benefits at the time alternative employment was offered to her. The Board agreed, finding that the WCJ lacked jurisdiction to render his decision suspending benefits where Claimant continued to be entitled to Act 534 benefits. The Board reached this conclusion despite the fact that the WCJ had not made any findings of fact regarding whether Claimant had ever actually received benefits under Act 534, or, if she had, whether such benefits had been terminated.[4] Furthermore, the Board did not cite to a single statutory or judicial authority which would support its interpretation of the law; rather, it relied almost exclusively on an article published in the Pa. Bar Quarterly,[5] which, in our view, erroneously states that "in order for workers' compensation [benefits] to be modified ... the Act 534 benefits ... must be terminated first." *Pocius, supra* note 5, at 126.

Polk Center now appeals the Board's decision to our Court. On appeal, Polk Center raises the following two issues for our review: (1) whether the Board erred in concluding that a WCJ lacks jurisdiction over a suspension petition under the Workers' Compensation Act (WCA)[6] where the Claimant is still receiving Act 534 benefits; and (2) whether the Board erred in vacating the decision of the WCJ based on Claimant's receipt of Act 534 benefits where this issue was never raised before the WCJ and there was no evidence regarding Claimant's receipt and/or termination of such benefits in the record.

Before reaching the merits of Polk Center's appeal, however, it is necessary to examine Claimant's rights under Act 534, since an understanding of Act 534 is both central to the issues raised on appeal and critical to the ultimate resolution of this case. Therefore, in addition to the facts enumerated above, we must also briefly explain the circumstances surrounding Claimant's receipt of benefits, or lack thereof, under Act 534, and the inter-relationship between those ben-

---

4. Claimant raised this question for the first time on appeal to the Board. Therefore, it is not surprising that the WCJ did not make any findings of fact concerning Claimant's receipt of Act 534 benefits.

5. James E. Pocius, *Workers' Compensation and Its Relationship with the Heart and Lung Act*, Pa. Bar Quarterly, 120–26 (July 1995). The cases which the Board did rely upon, specifically *City of Scranton v. Workmen's Compensation Appeal Board (Walsh)*, 127 Pa.Cmwlth. 89, 560 A.2d 937 (1989) and *City of Scranton v. Workmen's Compensation Appeal Board (Stone)*, 123 Pa.Cmwlth. 310, 552 A.2d 1183, *petition for allowance of appeal denied*, 522 Pa. 614, 563 A.2d 499 (1989), discussed *infra*, do not support the Board's conclusion and are to a large extent inapplicable to the facts of the present case.

6. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4.

efits and Claimant's benefits under the WCA.[7]

We initially note that since Claimant was injured by the act of a patient at the Polk Center, she was in fact entitled to receive her full salary as a result of this injury under the provisions of Act 534, and not just two-thirds of her salary as is generally the case under Section 306(a) of the WCA.[8] Act 534 provides in pertinent part:

> [A]ny employe of a State mental hospital ... under the Department of Public Welfare, who is injured during the course of his employment by an act of any inmate or any person confined in such institution or by any person who has been committed to such institution by any court of the Commonwealth of Pennsylvania or by any provision of the "Mental Health Act" ... shall be paid, by the Commonwealth of Pennsylvania, his full salary, until the disability arising therefrom no longer prevents his return as an employe of such department, board or institution at a salary equal to that earned by him at the time of his injury.

61 P.S. § 951. Furthermore, the receipt of benefits under Act 534 and the WCA are not mutually exclusive. Rather, Act 534 specifically provides that an injured worker may receive workers' compensation benefits simultaneously with Act 534 benefits; however, if that occurs, the Commonwealth is subrogated to the claimant's right for any workers' compensation payments made and is entitled to deduct any payments made directly to the claimant under the WCA from his or her future salary or benefits paid under Act 534. 61 P.S. § 951.

7. Unfortunately, as mentioned above, our task in this regard has been made more difficult by the absence of any factual findings concerning Claimant's receipt of Act 534 benefits.

8. 77 P.S. § 511. Of course, benefits under the WCA are further limited by constraints imposed under Section 105.2 of the WCA, 77 P.S. § 25.2, which establishes the statewide average weekly wage as a ceiling for maximum benefits paid.

9. We note that Claimant's statement before the WCJ that her Act 534 benefits had been stopped directly contradicts her underlying allegation

In the present case, we reiterate that the WCJ did not make any findings of fact regarding Claimant's receipt of Act 534 benefits, apparently concluding that such facts were not relevant to a suspension proceeding under the WCA. However, Claimant did testify at the initial hearing before the WCJ (March 31, 1994) that she had been receiving Act 534 benefits, but that all benefits had been stopped as of February 24, 1994.[9] Claimant's allegation that her benefits had been completely terminated led to the following discussion between the WCJ, Claimant, Claimant's and Employer's respective counsel, and Deborah Lee Myers (Polk Center's personnel analyst and a prior witness in the case):

[BY THE WCJ:] Do you [D. Myers] know what she's talking about, saying she hasn't got any check since February?

BY MS. MYERS: No, I'm confused. Because, actually, I don't think she's getting 534, I think she is getting workers' comp.

BY THE CLAIMANT: No, I haven't received a check since February 24th....

BY [CLAIMANT'S COUNSEL]: Yeah, there's a potential to obtain Act 534.

BY THE CLAIMANT: Yeah.

BY [CLAIMANT'S COUNSEL]: Which I was not aware that the time was running, and I faxed, on the 18th of March, a copy—a request for a 534 suspension.

BY THE [WCJ]: Is that what happened, you were on 534 and they suspended that, whatever their system is?

BY THE CLAIMANT: Everything. Everything. I have nothing.

BY THE [WCJ]: That goes through the retirement board or something. Who does that go through?

that the WCJ and the Board lacked jurisdiction in this case because Claimant was still receiving such benefits. Nonetheless, we recognize that implicit in Claimant's argument before this Court is the contention that although her Act 534 benefits may have been actually stopped, this was the result of the unilateral action on the part of Polk Center and was accomplished without the benefit of a legally conducted termination hearing under Act 534. Therefore, even if Claimant is not actually receiving Act 534 payments at this time, we understand that she believes that she continues to be entitled to such payments.

BY MS. MYERS: That would go through DPW benefits.

BY THE CLAIMANT: I believe PIMCO[10] pays them, the state or something, and then I'll get my check direct deposit in the credit union. But I haven't gotten a pay since the 24th of February [1994].

BY THE [WCJ]: Well, I don't know what [DPW's] procedure is, but if part of those benefits would represent workers' compensation, they can't just be stopped.

BY THE CLAIMANT: They were, though.

BY [POLK CENTER'S COUNSEL]: I wasn't aware that they were stopped.

BY THE CLAIMANT: They were.

BY THE [WCJ]: Irregardless of what the supersedeas ruling is, she's going to at least have to be caught up on her workers' comp.

(Notes of Testimony (N.T.), 3/31/94, at 18–19; Reproduced Record (R.R.) at 25–26.) The failure of the WCJ to make specific findings of fact regarding Claimant's receipt of benefits under both Act 534 and the WCA, combined with the overall confusion in the record regarding this issue as demonstrated by the above quoted testimony, prevents us from ascertaining with certainty whether Claimant was actually receiving Act 534 benefits at the time of, or prior to, the hearing before the WCJ. In addition, even assuming that Claimant's Act 534 benefits were stopped in February of 1994, we are unable to determine whether Claimant's workers' compensation benefits were improperly stopped by

Polk Center at that time [11] or whether Claimant was subsequently reimbursed by Polk Center after the March 31, 1994 hearing for any payments which may have been owed to her.

Nevertheless, after having conducted an exhaustive review of both Act 534 and the WCA, as well as relevant case law, we must conclude that the WCJ acted properly in exercising jurisdiction in this case and that the Board erred in concluding otherwise. Furthermore, since we believe Claimant's status under Act 534 is irrelevant for the purposes of deciding Polk Center's suspension petition under the provisions of the WCA, the failure of the WCJ to make findings of fact on this question is not fatal to the WCJ's ultimate determination in this case. The Claimant's receipt of Act 534 benefits has relevance only with regard to any workers' compensation payments which are possibly owed to Claimant for the time period after Act 534 benefits were terminated, but before the WCJ granted Polk Center a supersedeas. Therefore, for the reasons further enumerated below, we will reverse the decision of the Board and remand the case to the Board so that it may direct the WCJ to determine the sole question of whether Claimant is owed any money, including interest and penalties, for workers' compensation payments which were due from Polk Center prior to the WCJ's grant of a supersedeas in this case.

The Board, in reaching its decision, erroneously relied upon two of our prior opinions involving heart and lung benefits: *City of*

---

10. PIMCO is an abbreviation for the Pennsylvania Insurance Management Company. PIMCO is Polk Center's insurance carrier.

11. Although we obviously cannot make our own factual findings as to what did happen in regard to Claimant's benefits, it appears from the record that Polk Center may have failed to forward workers' compensation payments to Claimant after it had ceased making payments under Act 534. Prior to the cessation of Act 534 benefits, Polk Center would naturally have been entitled to subrogation; however, once those payments were terminated, Polk Center's right to subrogation would have also ceased. Accordingly, Polk Center would have had a duty to forward any future workers' compensation payments to Claimant or inform its insurance company (PIMCO) to send payments to Claimant directly.

We note that Polk Center alleges in its brief to our Court that Claimant's Act 534 benefits were in fact terminated by a prior decision of the Department of Public Welfare and that no appeal was taken from that decision. (Polk Center's Brief at 17 n. 4.) In addition, Polk Center alleges that it paid Claimant workers' compensation benefits until the WCJ granted it a supersedeas on April 4, 1994, effective March 31, 1994. *Id.* If these allegations are true, Polk Center would obviously owe Claimant nothing in the way of back payment under the WCA. We stress, however, that no conclusions may be drawn from these bare allegations absent any evidence in the record to substantiate these claims and absent any findings of fact concerning them by the WCJ.

*Scranton v. Workmen's Compensation Appeal Board (Walsh)*, 127 Pa.Cmwlth. 89, 560 A.2d 937 (1989) and *City of Scranton v. Workmen's Compensation Appeal Board (Stone)*, 123 Pa.Cmwlth. 310, 552 A.2d 1183, *petition for allowance of appeal denied,* 522 Pa. 614, 563 A.2d 499 (1989).[12] Both of these cases held that a claimant's benefits under the Workers' Compensation Act could not be modified where, *at the time suitable employment was offered to the claimant, the claimant had not yet begun to receive workers' compensation benefits;* the fact that the claimant was receiving benefits under the Heart and Lung Act [13] in those cases was totally irrelevant.

We recognize that the Heart and Lung Act and Act 534 are very similar in purpose and construction, and that our analysis of one may be applied to the other. *See, e.g., Mihok v. Department of Public Welfare,* 135 Pa.Cmwlth. 265, 580 A.2d 905 (1990). However, the Board's reliance on *Walsh* and *Stone* for the proposition that a WCJ lacks jurisdiction to hear a modification petition under the circumstances of the present case is misplaced. In *Walsh* and *Stone,* no workers' compensation payments were being made, or were owed, at the time suitable alternative employment was offered. Conversely, in the present case, a notice of compensation payable (dated July 1, 1991) had been issued.[14] The key fact underlying our decisions in *Walsh* and *Stone* is that neither claimant had an entitlement to workers' compensation benefits at the time the City of Scranton offered them employment. Since Claimant in the present case, however, did have an existing right to workers' compensation benefits at the time suitable alternative employment was offered to her, *Walsh* and *Stone* are clearly distinguishable. Accordingly, we conclude that the WCJ could exercise jurisdiction in this case and had the

authority to grant Polk Center's modification petition, regardless of whether Claimant was receiving benefits under Act 534, the Heart and Lung Act, or any other similar statutory provision.[15]

Our decision today upholds the separate and independent status which Act 534 and the WCA have previously been accorded under the laws of this Commonwealth. In *Hardiman v. Department of Public Welfare,* 121 Pa.Cmwlth. 120, 550 A.2d 590 (1988), we held that the provisions of Act 534 exist independently from the WCA, and that the grant or denial of benefits under Act 534 could not be conditioned upon a prior decision by a WCJ or the Board under the WCA. *See also Mihok.* Similarly, we will not condition the grant or denial of workers' compensation benefits upon a prior decision by DPW under Act 534. *See Hardiman.* To impose such a requirement would effectively elevate Act 534 to a privileged position superior to that held by the WCA. Absent express statutory authority to the contrary, we cannot unilaterally enlarge the authority of DPW under Act 534, while at the same time limiting the authority of WCJs and the Board under the WCA.

Although sharing a similar purpose, the two acts operate separately from one another, requiring independent action, after a full due process hearing by the respective governmental bodies which have been delegated to adjudicate such claims, before benefits under either act may be terminated. While in practice, employers may ordinarily attempt to terminate benefits under Act 534 first, since such benefits are greater than those which are owed under the WCA, neither statute prevents employers from initiating proceedings under the WCA before, after, or simultaneously with, proceedings under Act 534.

---

**12.** *See supra* note 5.

**13.** Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. § 637–38.

**14.** While there is some dispute as to whether Claimant was actually receiving any of these benefits, the WCJ found that benefit payments were being made.

**15.** We further note that, contrary to the assertion made by Claimant, *Walsh* and *Stone* were not decided on jurisdictional grounds. Rather, the WCJ and the Board in fact did have jurisdiction over the modification petitions in those cases, but we held that those petitions must nonetheless be denied as a matter of law since the claimants were not receiving workers' compensation benefits at the time alternative employment was offered.

If it were not possible to seek a suspension under the WCA prior to a determination under Act 534, the due process rights of both employers and their insurance companies could possibly be violated. Due to the subtle differences between the two acts, it is at least possible that a claimant would continue to be entitled to benefits under Act 534 while at the same time the employer would be entitled to a suspension or termination of benefits under the WCA. However, if a termination of benefits under Act 534 was a prerequisite to a suspension or termination of benefits under the WCA, an employer's insurance carrier would be precluded from obtaining relief under the WCA because such insurance carriers have no standing to bring an action under Act 534 to terminate benefits. Under that scenario, they would be forced to continue paying workers' compensation benefits indefinitely, with no right to a hearing, a situation fraught with constitutional infirmities.

Our decision in this case is further supported by the opinion of this Court in *Wisniewski v. Workmen's Compensation Appeal Board (City of Pittsburgh)*, 153 Pa.Cmwlth. 403, 621 A.2d 1111 (1993). In *Wisniewski*, we said that an employer could not terminate benefits under the Heart and Lung Act through a hearing before a WCJ and was required to terminate those benefits through a separate proceeding before the municipality. Significantly, while finding that a municipality could not terminate an employee's heart and lung benefits based upon a WCJ's decision under the WCA, *we nonetheless upheld the power of a WCJ to terminate benefits under the WCA even where the claimant continued to receive, or be entitled to, heart and lung benefits. Id.* By analogy, we believe this same principle applies where a claimant is receiving benefits under Act 534. *See Mihok*, 580 A.2d at 907 ("This Court has recognized the similarities between Act 534 and the Heart and Lung Act and the appropriateness of adopting analyses of one for construction of the other.").

We therefore conclude that the WCJ had jurisdiction in this case regardless of whether Claimant was receiving benefits under Act 534. Since Claimant, in neither its appeal to this Court nor to the Board, contested the underlying merits of the WCJ's decision to suspend her benefits, the decision of the Board must be reversed and the decision of the WCJ reinstated. However, since there is an outstanding question regarding whether Polk Center paid Claimant all of the workers' compensation benefits which were owed to her prior to the WCJ's granting of a supersedeas in this case, we will remand the case to the Board for the sole purpose of resolving that limited issue.

Accordingly, the order of the Board is reversed and the case is remanded for further proceedings on the limited question of whether Polk Center owes Claimant money, including interest and penalties, for prior workers' compensation payments which are owed to her, but were improperly withheld by Polk Center or its insurance company.

*ORDER*

NOW, September 12, 1996, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby reversed, the order of the Workers' Compensation Judge granting the suspension petition of Polk Center/Department of Public Welfare is reinstated, and the case is remanded to the Board for further proceedings in accordance with the foregoing opinion. On remand, the Board shall direct the Workers' Compensation Judge to determine the sole question of whether Polk Center/Department of Public Welfare improperly withheld workers' compensation payments owed to Rosemarie Pochran prior to the granting of a supersedeas in this case, and if so, how much money is now owed to her, including any interest and penalties.

Jurisdiction relinquished.