**YDC NEW CASTLE–PA DPW, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (HEDLAND), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 11, 2008.

Decided June 11, 2008.

Bridget L. Smith, Pittsburgh, for petitioner.

No appearance entered on behalf of respondent.

BEFORE: SMITH–RIBNER, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

YDC New Castle—Pennsylvania Department of Public Welfare (Employer) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) that granted a Claim Petition filed by Russell Hedland (Claimant). We affirm.

Claimant sustained injuries in the course and scope of his employment with Employer on September 3, 2004 upon being assaulted by a student. He reported his injury to his supervisor. Claimant finished his shift but afterwards developed pain in his neck. He was scheduled to work the following day. He called off work, however, due to his injury. Ultimately, Claimant missed two months of work due to his injury.

Employer issued a Notice of Compensation Payable (NCP) on September 20, 2004 that described Claimant's injury as a cervical and thoracic sprain and strain. Employer made a specific notation on the NCP indicating that Claimant was receiving benefits under the Act of December 8, 1959, P.L. 1718, *as amended,* 61 P.S. §§ 951–952 (Act 534).[1] Claimant received benefits under Act 534 as of September 6,

---

1. Section 1 of Act 534 reads, in pertinent part:

Any employe of a State mental hospital ... under the Department of Public Welfare, who is injured during the course of his employment by an act of any inmate or any person confined in such institution or by any person who has been committed to such institution by any court of the Commonwealth of Pennsylvania or by any provision of the "Mental Health Act" ... shall be paid, by the Commonwealth of Pennsylvania, his full salary, until the disability arising therefrom no longer prevents his return

as an employe of such department ... at a salary equal to that earned by him at the time of his injury ...
During the time salary for such disability shall be paid by the Commonwealth of Pennsylvania any workmen's compensation received or collected for such period shall be turned over to the Commonwealth and paid into the General Fund, and if such payment shall not be so made, the amount so due the Commonwealth shall be deducted from any salary then or thereafter becoming due and owing.
61 P.S. § 951.

2004.[2] He did not receive any benefits for September 4, 2004 and September 5, 2004. Instead, he was required to use his sick leave.

█ Claimant filed a Claim Petition for benefits under the Pennsylvania Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2708(WCA), on May 30, 2006 concerning his injury.[3] Claimant sought total disability benefits for the two days immediately following his work injury and prior to the commencement of benefits under Act 534. In the alternative, Claimant sought reimbursement of his sick time. Employer acknowledged that there was no dispute that the work injury occurred. It only challenged Claimant's entitlement to benefits for September 4, 2004 and September 5, 2004 because Claimant had no medical documentation to support his absences on those dates.

Claimant testified that he did not seek medical treatment immediately following his injury. He agreed that he did not see Thomas R. Wilkins, D.C. until Wednesday, September 8, 2004. Claimant explained, however, that his injury occurred on a Friday and that the doctor's office was closed on Saturday and Sunday. He added that Monday and Tuesday were his normal days off. According to Claimant, he did not believe he was capable of working on the two days he was scheduled to work prior to his medical examination because of the pain in his neck and shoulders. He noted stiffness in his neck and tingling and numbness in his left arm.

Claimant acknowledged that he could have gone to the emergency room. He did not believe, however, that his injuries constituted an emergency. Claimant explained that he was removed from work by Dr. Wilkins. He agreed that over time his symptoms improved and he was able to return to work. Claimant did not dispute the fact that Employer's manual states that if he is absent from work, he needs medical documentation to support the absence.

Claimant submitted the medical records of Dr. Wilkins. On a Status Report dated September 8, 2004, Dr. Wilkins indicated that Claimant was injured on September 3, 2004 and checked off a box reading "[t]he patient is totally incapacitated at this time." Certified Record (C.R.) at 29a.

Employer submitted a document into the record that was initialed by Claimant indicating he was advised that:

> [Injured workers] are required to provide medical documentation to support an absence from work based upon on (sic) medical examination that occurred on the first day of their absence.

C.R. at 5a.

Employer further submitted an excerpt from its handbook, specifically "Chapter 4—Reporting Injuries, Recurrences, and Ongoing Eligibility." Under the heading

---

**2.** An injured workers' right to collect benefits under Act 534 commences with the onset of disability, not the date of injury. *See DePaolo v. Department of Public Welfare,* 865 A.2d 299 (Pa.Cmwlth.2005)(holding that Act 534 proceedings must be commenced within six years of the date of disability).

**3.** Receipt of benefits under Act 534 and the WCA, are not mutually exclusive. Rather, Act 534 specifically provides that an injured worker may receive workers' compensation benefits simultaneously with Act 534 benefits. *Polk Ctr./Department of Public Welfare v. Workmen's Compensation Appeal Board (Pochran),* 682 A.2d 889 (Pa.Cmwlth.1996). If that occurs, however, the Commonwealth is subrogated to the claimant's right for any workers' compensation payments made and is entitled to deduct any payments made directly to the claimant under the WCA from his future salary or benefits paid under Act 534. *Id.* at 892.

"Employee Requirements," it reads, in pertinent part:

> After reporting the injury/recurrence to your supervisor/next line authority, you must comply with the following:
>
> . . .
>
> 2. Provide medical documentation, based on an examination/treatment, that supports from the first day, any absence or continued absence or continuation of modified duties . . .

C.R. at 15a.

Finally, Employer submitted a form entitled "Employee Responsibilities & Medical Authorization" indicating that Claimant was required to treat with a panel physician but that he could seek emergency treatment if necessary. This form, signed by Claimant, reiterated that he must "provide medical documentation to support your absence from work based upon a medical examination that occurred on the first day of your absence." C.R. at 23a.

By a decision circulated January 22, 2007, the WCJ concluded that Claimant met his burden of proof in this matter. The WCJ acknowledged Employer's policy concerning medical documentation. Nonetheless, he credited Claimant's testimony that he did not seek medical attention right away because he did not believe his situation constituted an emergency. The WCJ noted Employer's concerns about the potential for abuse if its policies were not required to be followed. He explained, however, that the concerns raised by Employer were not present in the facts before him. Consequently, he granted Claimant's Petition and directed Employer to pay Claimant two days of indemnity benefits or restore his sick time. Employer appealed this decision to the Board which affirmed in an order dated January 15, 2008. This appeal followed.[4]

Employer argues on appeal that the WCJ erred in granting Claimant's Petition. It contends that the WCJ capriciously disregarded evidence that Employer had a policy that Claimant had to provide medical documentation for his absences as a result of his work injury as of the first day, that Claimant was aware of such policy, and that Claimant did not provide such evidence until his examination on September 8, 2004. Employer suggests that there is nothing in the WCA that would preclude Employer from requiring medical documentation to support a claimant's absence. It adds that it bargained for such a requirement.[5]

---

**4.** Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *DeGraw v. Workers' Compensation Appeal Board (Redner's Warehouse Mkts., Inc.)*, 926 A.2d 997 (Pa. Cmwlth.2007).

**5.** This Court acknowledges that Section 306(e) of the WCA, 77 P.S. § 514, provides that no compensation shall be allowed for the first seven days of disability unless that disability lasts fourteen days or more. At first blush, it is a concern that Claimant sought, and the WCJ awarded, workers' compensation benefits for only two days in light of this provision. Due to the fact that Claimant, in actuality, was out of work for two months,

however, he theoretically would have been entitled to workers' compensation benefits for that entire time. In so stating, we reiterate, per *Polk*, that workers' compensation benefits and benefits under Act 534 are not mutually exclusive. We add that the Commonwealth, upon making payments pursuant to Act 534, is subrogated to Claimant's workers' compensation payments. Thus, any workers' compensation benefits paid attributable to Claimant's disability after September 5, 2004 would have to be turned over to the Commonwealth regardless because of its subrogation right. Consequently, although Claimant may have been legally entitled to two months of workers' compensation benefits, it is of no surprise that he only sought benefits for September 4, 2007 and September 5, 2007, as he would only have been required to turn over any

■ We do not believe the WCJ erred in granting Claimant's Petition.[6] We recognize that a claimant's medical expert is not required to be an eyewitness to the claimant's disability status throughout the pendency of a claim petition. *American Contracting Enter. v. Workers' Compensation Appeal Board (Hurley)*, 789 A.2d 391 (Pa.Cmwlth.2001). A WCJ is free to determine the chronological length of a claimant's disability based on all evidence presented, including the claimant's own testimony. *Id.* at 398. *See also Ricks v. Workmen's Compensation Appeal Board (Parkway Corp.)*, 704 A.2d 716 (Pa. Cmwlth.1997).

■ The medical records of Dr. Wilkin's noted that Claimant was restricted from work as of the date of his examination on September 8, 2004. Claimant received Act 534 benefits as of September 6, 2004. Claimant credibly testified that he did not believe he was able to work from the date of his injury through the date he treated with Dr. Wilkins and was taken off work. The WCJ is the final arbiter of witness credibility and the weight to be accorded evidence and may accept or reject the testimony of any witness in whole or in part. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa.Cmwlth.1995). Pursuant to both *Hurley* and *Ricks*, Claimant has met his burden to establish he is entitled to benefits for the two days he seeks, September 4, 2004 and September 5, 2004.

■ We are aware of Employer's concerns that in affirming the Board's Order, it will be severely prejudiced in the future if a claimant was not required to submit medical documentation in support of his absence(s). For instance, it asserts that employees could call off work when there is no medical necessity and attribute their need to call off to their work injury. Moreover, it contends that if a claimant had an accepted work injury and subsequently called off, the lack of necessity to provide medical documentation could permit an intervening non-work-related incident to go undiscovered. Finally, Employer suggests that our ruling will permit an injured worker to wait to seek medical treatment following his work injury but still allow him to collect workers' compensation for the period prior to the date he sought medical treatment, thereby allowing a surreptitious claimant to avoid detection of illegal drug use by waiting a few days for the drugs to get out of his system prior to seeking medical care.[7]

Prior to addressing Employer's individual concerns, we do not hesitate to point out that Section 407 of WCA, 77 P.S. § 731, provides, in relevant part:

> [A]ny agreement made ... permitting a commutation of payments contrary to the provisions of this act, or varying the

payments of workers' compensation benefits to the Commonwealth after that period anyway. In any event, because Employer's appeal concerns only whether it is liable for benefits for absences that occurred prior to the date a doctor's excuse is received, we will not address this issue any further.

6. Neither party raises the issue of whether a reinstatement petition should have been filed instead of a claim petition in view of Employer's prior NCP.

7. Section 301(a) of the WCA, 77 P.S. § 431, provides that "in cases where the injury ... is caused by intoxication, no compensation shall be paid if the injury would not have occurred but for the employe's intoxication, but the burden of proof of such fact shall be on the employer." Thus, if an employer is able to present evidence that a claimant's voluntary intoxication was the cause in fact of his injury, no benefits will be awarded. *Mahon v. Workers' Compensation Appeal Board (Expert Window Cleaning)*, 835 A.2d 420 (Pa.Cmwlth. 2003).

amount to be paid or the period during which compensation shall be payable as provided in this act, shall be wholly null and void.

■■■ We have stated that the intent of the General Assembly, as expressed in Section 407 of the WCA, is clear: agreements which vary the amount or time for payment of compensation benefits are "wholly null and void" and, thus, unenforceable. *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board (Maas)*, 506 Pa. 592, 487 A.2d 794 (1985). Thus, regardless of the fact that Employer may have bargained for the right to establish a policy requiring an employee to provide a medical excuse to support the need to be absent from work as of the first day of the absence, such an agreement cannot be used to limit the period compensation would otherwise be payable under the WCA and Act 534, as well, even if the employee fails to comply with such policy.[8]

■■■ As to Employer's first contention, we note that if a claimant has a periodic absence from work that employer questions is work-related, the claimant, if he chooses to pursue indemnity benefits, will still have the burden to establish that absence is related to his work injury. *Mavrich v. Workmen's Compensation Ap-*

peal Board (Phoenix Glass/Anchor Hocking Corp.), 131 Pa.Cmwlth. 648, 571 A.2d 549 (1990). As to the second contention, we note that a claimant waives the right to nondisclosure of private medical information when his physical or mental condition is placed at issue. *Doe v. Workers' Compensation Appeal Board (USAir, Inc.)*, 653 A.2d 715 (Pa.Cmwlth.1995). Thus, the threat of a subsequent injury going undiscovered has been minimized.

As to the final contention, we note that an employer's ability to obtain any information concerning an employee's possible intoxication may be tangentially impacted by the employee's delay in seeking medical attention. Its assertion that an employee may wait to seek medical treatment in order to avoid detection of intoxication, however, is too speculative to warrant modification of the rule espoused herein.[9] Moreover, we believe that any argument concerning the postponement of medical services must be brought under Section 306(f.1)(8) of the WCA, 77 P.S. § 531(8), that states, in relevant part:

> If the employee shall refuse reasonable services of health care providers, surgical, medical and hospital services, treatment, medicines and supplies, he shall forfeit all rights to compensation for any injury or increase in his incapacity

---

8. Notwithstanding the fact that Employer's policy cannot limit the period during which compensation is payable, we acknowledge that Employer is not precluded from taking disciplinary action if an employee fails to follow its own rules. We recognize that termination from employment is a possible disciplinary measure and we are cognizant that such action may ultimately impact a claimant's entitlement to compensation. *Vista Int'l Hotel v. Workers' Compensation Appeal Board (Daniel)*, 560 Pa. 12, 742 A.2d 649 (1999). In such a circumstance, a claimant's continued entitlement to benefits turns on whether he was terminated for conduct tantamount to bad faith. *Coyne*, 942 A.2d at 945–6; *See also Shop Vac Corp. v. Workers' Compensation Ap-*

peal Board (Thomas), 929 A.2d 1236 (Pa. Cmwlth.2007). That scenario is not present before us, however, and we need not address this issue further. We also note that this decision is only applicable to absences proven to be due to injuries sustained during the course of employment, so that it does not affect the employer's bargained for rights regarding other types of absence.

9. As indicated previously, however, if an employer requires the administration of a test for detection of a controlled substance following a work injury, the injured worker may nonetheless be subject to employer discipline if he fails to comply with the policy.

shown to have resulted from such refusal.

 The term "forfeiture" as used in this Section means a suspension of benefits as opposed to a termination of benefits. *Farance v. Workers' Compensation Appeal Board (Marino Bros.),* 774 A.2d 785 (Pa.Cmwlth.2001). This Section requires an employer to pay for reasonable medical treatment, while imposing a duty upon the employee to avail himself of these services. *Alltel, Inc. v. Workers' Compensation Appeal Board (Baum),* 829 A.2d 739 (Pa.Cmwlth.2003). If an employer wishes to seek a suspension of benefits for a given period where an employee fails to avail himself of medical attention, it may raise this issue by seeking relief under Section 306 of the WCA.[10]

After a review of the record, we conclude that the Board did not err in affirming the WCJ's Order as all findings are supported by substantial evidence. Accordingly, the Decision of the Board is affirmed.

### ORDER

AND NOW, this 11th day of June, 2008, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

---

**10.** Employer did not assert a right to relief under Section 306 of the WCA before the WCJ. Instead, as indicated, it asserted Claimant was not entitled to benefits for September 4, 2004 and September 5, 2004 because he had no medical documentation to support his absences on those dates in derivation of its policy. An issue must be preserved at each stage of the proceeding or it is deemed waived. *Nabisco Brands, Inc. v. Workers' Compensation Appeal Board (Tropello),* 763 A.2d 555 (Pa.Cmwlth.2000).