IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Hugh Frank, Jr., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 650 C.D. 2018 |
| | : | Submitted: August 31, 2018 |
| Workers' Compensation Appeal | : | |
| Board (Southampton Tire), | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: November 26, 2018

        Hugh Frank Jr. (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) awarding Claimant medical-only benefits for his work injuries, which included the loss of a tooth.  In so doing, the Board modified the decision of the Workers' Compensation Judge (WCJ) that Claimant's tooth extraction had caused a compensable disfigurement, holding, instead, that until the tooth implant was completed, the disfigurement claim could not be determined.  In all other respects, the Board affirmed the WCJ decision, agreeing Claimant had recovered from his neck and left shoulder muscle strain and had not suffered a work-related wage loss.  Discerning no merit to Claimant's asserted errors, we affirm the Board.

        Claimant worked for Southampton Tire (Employer) as an auto mechanic for over two years, earning an average weekly wage of $1,160.02.  On February 1, 2016, he tripped and fell to the floor, landing on his left side.  The fall

cracked his tooth. He reported the accident and immediately sought medical treatment.

On February 9, 2016, Employer acknowledged the injury as a fractured No. 12[1] tooth and issued a medical-only notice of temporary compensation payable (NTCP), pursuant to the Pennsylvania Workers' Compensation Act (Act).[2] On April 11, 2016, Claimant filed a claim petition, asserting a wage loss caused by his work injury, which he described as "cracked teeth, tinnitus, jaw pain, neck pain, left shoulder pain, [and] headaches." Claim Petition ¶1 at 1; Reproduced Record at 3a (R.R. __). Employer filed an answer specifically denying each paragraph of the claim petition.

A hearing was held before the WCJ. Claimant testified that his fall at work caused immediate pain in his jaw, ear, neck, left shoulder and eye socket in addition to cracking his tooth. His dentist referred Claimant to a specialist, who removed the tooth surgically and inserted an implant. When the implant has stabilized, Claimant's dentist will complete the procedure by fixing an artificial tooth onto the implant.

Claimant testified that for his musculoskeletal injuries, he sought treatment from Michael Piszel, D.C., a licensed chiropractor, who has treated Claimant, on occasion, for lumbar pain since 2009. Claimant first saw Dr. Piszel for his neck and shoulder pain on February 2, 2016, and continues to see him two to three times a week to alleviate the pain. However, Claimant continues to have jaw pain, ringing in his ears and headaches. Claimant has not sought medical treatment for his jaw pain, headaches or tinnitus.

---

[1] The No. 12 tooth is a molar.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

Claimant testified that he continued to work after his fall. However, he missed work for dental appointments and was tardy on those occasions when the pain was so severe he could not sleep. Claimant estimated that he "called out sick" four to five times after his fall. Notes of Testimony (N.T.), 5/5/2016, at 12; R.R. 18a.

Claimant testified that Employer fired him three weeks after his work injury. Claimant stated that on February 22, 2016, he called Employer to explain that he would be five minutes late, and Employer responded that Claimant's "services were no longer needed." N.T., 9/8/2016, at 13; R.R. 97a. After he was fired, Claimant opened an automotive repair shop on April 1, 2016. Claimant continues to work full-time there and agreed that he is capable of performing all aspects of his automobile repair job.

In support of his asserted work injury, Claimant presented the deposition testimony of Dr. Piszel, who agreed he began treating Claimant for lumbar pain in 2009 and saw Claimant sporadically, until February 2, 2016, when he saw Claimant for neck and left shoulder pain. Dr. Piszel explained that Claimant's magnetic resonance imaging (MRI) of the cervical spine showed disc herniations on the right side. Claimant's complaints of pain, however, were left-sided. The MRI of Claimant's left shoulder showed no signs of damage other than arthritic spurring. An electromyography (EMG) showed left C5-C6 radiculopathy, and a mild to moderate compression of the neurovascular bundle.

Dr. Piszel opined that Claimant sustained a work-related cervical disc injury at C4-5 and C5-6 with left-sided radiculopathy and myelopathy. Dr. Piszel believed Claimant's jaw pain was caused by a work-related temporomandibular joint (TMJ) injury. Although Claimant's MRI did not show that Claimant had a distinct

3

shoulder injury, Dr. Piszel stated that Claimant has not recovered and shows both subjective and objective evidence of pathology. Dr. Piszel has not restricted Claimant from working because Claimant is self-employed and can limit his work when he experiences pain.

Employer presented the testimony of Bernard Krause, its service manager. Krause stated that Claimant continued to work after his fall without complaints of pain. Claimant did work a few partial days because of medical appointments, and he was late on several occasions. However, Claimant never stated that he was missing work because of his work accident. In mid-February, Claimant gave Krause two weeks' notice of his resignation, which made Claimant's last day of work February 22. On that morning, Claimant called Krause to say he would be late. Krause replied that since it was Claimant's last day, he might as well not come in at all.

Claimant applied for unemployment benefits, asserting that he was fired. Because the Department of Labor and Industry determined that Claimant had voluntarily quit, it denied Claimant unemployment benefits.

Employer also presented the testimony of Timothy Steigerwalt, its president. He presented Claimant's time records from the period after his fall. Steigerwalt testified that Claimant missed a few hours of work, but Claimant did not state that it was related to the work injury. Throughout his employment, Claimant was occasionally tardy. Steigerwalt confirmed that Claimant resigned and opened his own automotive repair shop, but on March 1, 2016, not April 1, 2016, as asserted by Claimant.

Employer presented the testimony of Donald Leatherwood, M.D., an orthopedic surgeon, who conducted an independent medical examination (IME) of

4

Claimant on June 14, 2016. Claimant's emergency room report indicated a cracked tooth, but normal neck and upper extremities. Dr. Leatherwood's examination of Claimant showed no objective evidence of injury, except for the loss of his tooth. Dr. Leatherwood found Claimant's right-sided disc herniations on the MRI to be degenerative and unrelated to Claimant's left-sided pain. Claimant's EMG showed chronic left radiculopathy at C5-C7 and possible right median neuropathy, but the EMG was not consistent with the cervical MRI, which showed only right-sided findings and no nerve root compression. Dr. Leatherwood concluded that the possible right median nerve neuropathy was an incidental finding because Claimant was asymptomatic. Dr. Leatherwood opined that Claimant could have suffered a neck and left shoulder muscle strain at the time of injury but, if so, he had recovered by the date of the IME.

Employer also offered a report by P. Michael Schelkun, M.D., D.D.S., dated October 14, 2016. Dr. Schelkun saw Claimant on February 16, 2016, and concluded that Claimant's cracked tooth could not be salvaged. Dr. Schelkun extracted the tooth on March 4, 2016, and did a dental implant. On July 27, 2016, the implant was tested for integration, and it passed. Dr. Schelkun released Claimant to his primary dentist for the placement of an artificial tooth on the implant. Dr. Schelkun did a panoramic radiograph of Claimant that showed no evidence of TMJ or maxillofacial fractures. Claimant never complained to Dr. Schelkun of jaw pain.

The WCJ found that Claimant's work injury consisted of a fractured tooth and a neck and shoulder strain and sprain. The WCJ found Claimant to be fully recovered from the strain and sprain as of the date of the IME, *i.e.*, June 14, 2016. The WCJ awarded Claimant medical expenses from February 1, 2016, through June 14, 2016, for his sprain treatment. Employer remained liable for medical

5

expenses regarding the tooth injury. In making these determinations, the WCJ credited the testimony of Drs. Leatherwood and Schelkun. Additionally, the WCJ found that Claimant failed to establish any loss of income and accepted Employer's evidence that Claimant voluntarily left his position after providing a two-week notice.

With respect to Claimant's tooth, the WCJ found there was a noticeable gap when Claimant smiled, which constituted disfigurement. However, because Claimant was scheduled for a restorative implant, his claim for disfigurement was premature. The WCJ held that if the restorative implant does not eliminate the disfigurement, then Claimant may pursue a disfigurement claim.

Claimant appealed to the Board, asserting that the WCJ erred in rejecting Dr. Piszel's opinion that Claimant suffered ongoing work injuries and holding that Claimant did not suffer a work-related wage loss; in finding that Employer's contest was reasonable; and in not finding permanent disfigurement. The Board modified the WCJ's determination with respect to Claimant's disfigurement because of the upcoming restorative implant. The Board agreed, however, that should the restoration not succeed in eliminating the gap between his teeth, Claimant could file a disfigurement claim.

Claimant has petitioned for this Court's review.[3] On appeal, he raises three issues. Claimant argues that the Board erred by (1) limiting his work injury to

---

[3] This Court's review of an order of the Board determines whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or whether an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012). Review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*,

a neck and left shoulder strain; (2) denying wage loss benefits; and (3) denying disfigurement benefits.

We begin with a review of the law. In a claim for benefits, a claimant must establish that he sustained a compensable injury that has continued throughout the claim petition proceeding. *Soja v. Workers' Compensation Appeal Board (Hillis-Carnes Engineering Associates)*, 33 A.3d 702, 707 (Pa. Cmwlth. 2011). It is the claimant's burden to establish a causal relationship between the work injury and the disability, which is a loss of earning power. *Somerset Welding and Steel v. Workmen's Compensation Appeal Board* (*Lee*), 650 A.2d 114, 118 (Pa. Cmwlth. 1994). When evaluating a claim, the WCJ is free to reject the testimony of any witness in whole or in part. *Minicozzi v. Workers' Compensation Appeal Board (Industrial Metal Plating Inc.*), 873 A.2d 25 (Pa. Cmwlth. 2005). The WCJ, as the ultimate fact finder, determines the credibility of witnesses and the weight to be assigned the evidence. *Green v. Workmen's Compensation Appeal Board* (*Association for Retarded Citizens*), 670 A.2d 1216, 1221 (Pa. Cmwlth. 1996).

In his first issue, Claimant argues that his work injuries included neck pain, left shoulder pain, TMJ, headaches and tinnitus, from which he has not recovered. In support, he notes that Dr. Piszel established that Claimant continued to need treatment for his neck and left shoulder pain because of ongoing muscle spasms. Employer responds that the WCJ did not accept the medical opinion of Dr. Piszel. Instead, the WCJ credited Dr. Leatherwood's opinion that there was no objective evidence that Claimant had a neck and shoulder injury at the time of the

---

812 A.2d 478, 487 (Pa. 2002). Capricious disregard of the evidence exists "when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Station Square Gaming L.P. v. Pennsylvania Gaming Control Board*, 927 A.2d 232, 237 (Pa. 2007).

7

IME. Employer also notes that Dr. Schelkun found no evidence of TMJ dysfunction, and that Claimant offered no medical evidence on either his tinnitus or his headaches.

The WCJ found that a neck and shoulder strain was consistent with the mechanism of Claimant's injury, *i.e.*, a fall with enough force to fracture a tooth. However, he rejected Dr. Piszel's testimony that the injury was more than a strain, explaining as follows:

> There is an incongruity between the MRI and the subjective complaints and the EMG. The MRI changes were toward the right while the complaints and EMG findings were toward the left. Even the disc at C4/5 which Dr. Piszel described as a paramedian was actually toward the right side. Moreover, Dr. Leatherwood described the neck as having "significant degenerative disease" which could explain the presence of the MRI changes. Also, the objective examination in the emergency room was normal for the neck and shoulder. Finally, Claimant continued to perform a heavy job and the treating chiropractor never disabled Claimant or referred him to a medical specialist, and these factors suggest the nature of the pathology was not severe.

WCJ Decision, Finding of Fact No. 16.b, at 8. The WCJ found that Claimant had fully recovered from his neck and left-shoulder injury based on Dr. Leatherwood's opinion. It was the WCJ's prerogative to credit Dr. Leatherwood over Dr. Piszel, and he fully explained his reasons for doing so. The WCJ also observed that Claimant was able to return full-time to a heavy job without pain medication, and Claimant acknowledged that the left side injury had improved over time with treatment. In sum, Claimant has failed to establish error with respect to his first issue on appeal.

In his second issue, Claimant asserts that the Board erred in denying him wage loss benefits. Claimant contends his work injury caused him to be absent from work, resulting in a loss in wages. Some of the loss was caused by dentist appointments and others by his inability to sleep at night due to the pain. Claimant asserts that he is entitled to disability benefits for his last day of work because Employer told him not to come in. Employer responds that Claimant never presented a doctor's note that any of his absences were due to his work injury or for scheduled dental appointments. Further, he never told Employer that his work injury pain had caused him to call in sick for a full day.

Claimant testified that he worked a 40-hour week. However, he acknowledged that there were days he was sent home early because of lack of work. The WCJ made a specific finding on Claimant's work days after the accident:

> Claimant did not miss 4-5 days after the fall. Claimant only missed a couple of hours sporadically for doctor's appointments. Claimant was employed for 40 hours per week. According to the Employer's records Claimant worked the following hours after the injury: February 3-9th – 31.39 hours (called-out February 3rd); February 10-16th – 25.13 hours (no work on February 11th); February 17-23rd – 33.14 hours ([c]alled-out February 23rd).

WCJ Decision, Finding of Fact No. 9.g., at 5. The WCJ found that Claimant's absence on his final of day of work had nothing to do with his work injury. Accordingly, Claimant missed work, but Claimant's evidence did not establish that his absences from work were caused by his work injury. The WCJ credited Krause's testimony that Claimant never claimed he was having difficulty doing his job as a result of the work injury.[4]

---

[4] Further, the WCJ found Claimant's recollection was suspect. He claimed to have missed four to five days of work due to his injury, but the time records belied that claim.

9

The Board affirmed the WCJ, explaining that Claimant had the burden of proving that his periodic absences from work were related to the work injury. *YDC New Castle-PA DPW v. Workers' Compensation Appeal Board (Heland)*, 950 A.2d 1107, 1113 (Pa. Cmwlth. 2008). Moreover, when a claimant leaves the workplace for medical treatment, he needs to establish that the treatment was not readily available during non-work hours and not "attributable to [the] claimant's preference to pursue treatment during work hours." *CPV Manufacturing, Inc. v. Workers' Compensation Appeal Board (McGovern)*, 805 A.2d 653, 659 (Pa. Cmwlth. 2002). Claimant offered no specifics about his medical appointments or whether he could have pursued treatment during non-work hours. Likewise, Claimant never informed Employer that pain was interfering with his ability to work. Accordingly, Claimant did not meet his burden of proving that his work absences were caused by his work injury, and we reject Claimant's second legal challenge to the Board's adjudication.

In his third issue, Claimant argues that the Board erred in modifying the WCJ's determination that Claimant suffered a disfigurement. Claimant argues that the loss of his tooth is noticeable and, thus, the case should be remanded for the WCJ to award specific loss benefits. Employer responds that his disfigurement is, at most, temporary and, thus, not compensable.

The Act provides for the payment of benefits to compensate an employee for a facial disfigurement. Section 306(c)(22) states as follows:

> For serious and permanent disfigurement of the head, neck or face, of such a character as to produce an unsightly appearance, and such as is not usually incident to the employment, sixty-six and two-thirds per centum of wages not to exceed two hundred seventy-five weeks.

10

77 P.S. §513(22). Claimant asserts that because the loss of his tooth is serious and permanent he is entitled to compensation for his disfigurement.

In support, Claimant directs the Court to *Agnello v. Workers' Compensation Appeal Board (Owens-Illinois)*, 907 A.2d 676 (Pa. Cmwlth. 2006). There, the claimant's work injury resulted in the loss of three lower front teeth. The claimant's remaining lower teeth were removed for reasons unrelated to her work injury; all were replaced with a full lower denture. The claimant asserted that the lower denture constituted a disfigurement because it was obvious her lower teeth were not natural. The WCJ denied the claim, noting that the claimant's upper teeth had been replaced with a denture for reasons not related to work, and she lost most of her lower teeth for reasons not related to work. Further, her lower teeth were not visible above the lip line. The Board affirmed, explaining that the lower denture eliminated any unsightliness caused by the loss of her three teeth.

This Court reversed. We explained that when reviewing a disfigurement claim based upon the claimant's use of a prosthesis, the Board must consider that the claimant must live "day in and day out" with the device, *id.* at 679, and must view the claimant without her prosthesis to evaluate the damage. Because the claimant had no teeth when she removed her lower denture, we held that she had suffered a serious, permanent and unsightly disfigurement.

Employer responds that *Agnello* is distinguishable. It established that "dentures should not be considered when determining whether there was a disfigurement … because they do not resolve the disfigurement, only mask it." *Id.* Here, by contrast, Claimant will receive a permanent implanted tooth that is not a mask. We agree with Employer.

11

The use of artificial devices that mask a problem was further considered in *Scapellato v. Workmen's Compensation Appeal Board (Guardian Industries Corp.)*, 671 A.2d 1196 (Pa. Cmwlth. 1996). There, the claimant suffered a work injury to his right eye. The claimant underwent two surgical procedures, during which a cataract was removed and a lens implanted. Prior to the surgery, the claimant could not see with his right eye. After the surgery, his eyesight was blurred but close to normal. The claimant sought specific loss benefits and presented expert medical testimony that the plastic lens implanted into his eye was a prosthetic device. The employer's medical expert agreed it was artificial, but opined, further, that it was a permanent, and integral part of the eye.

The WCJ held that the claimant did not establish loss of use of his eye. The Board agreed, noting "the mere fact that a foreign object was inserted during surgery does not mean that its existence should be discounted … in the same way that the use of other 'prosthetic devices,' such as eye glasses or contact lenses, would be ignored when making this determination." *Id.* at 1198. This Court affirmed, stating "that a determination regarding the issue of specific loss cannot focus solely on whether a claimant's condition has been remedied with the aid of an artificial device or material." *Id.* at 1199. We rejected the claimant's argument that for purposes of disfigurement, his vision should be measured as if the surgical implant had not been performed.

Although *Scapellato* concerned a specific loss benefit, it is instructive on disfigurement. Claimant is scheduled for a restorative implant, *i.e.*, an artificial device that will duplicate his lost tooth. In the meantime, his disfigurement is not "permanent," as required by the Act. 77 P.S. §513(22). We agree with the Board that Claimant's disfigurement claim is premature. Claimant may pursue a

12

disfigurement claim following completion of his tooth restoration should he believe it has left him with a disfigurement.

For all these reasons, we affirm the Board's adjudication.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hugh Frank, Jr.,                   :
             Petitioner          :
                                       :
             v.                  :     No. 650 C.D. 2018
                                       :
Workers' Compensation Appeal     :
Board (Southampton Tire),        :
             Respondent      :

# **O R D E R**

AND NOW this 26th day of November, 2018, the order of the Workers' Compensation Appeal Board, dated April 25, 2018, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge