**Cheryl DePAOLO, Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 2004.

Decided Jan. 4, 2005.

As Amended Jan. 11, 2005.

Keith J. Figured, Philadelphia, for petitioner.

Jeffrey P. Schmoyer, Pittsburgh, for respondent.

BEFORE: FRIEDMAN, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Cheryl DePaolo (Claimant) petitions for review of the April 12, 2004, order of the Department of Public Welfare (DPW), Bureau of Hearings and Appeals (BHA), which affirmed the Administrative Law Judge's (ALJ) recommendation to deny Claimant benefits under the act commonly known as Act 534.[1] We affirm.

On October 8, 1989, Claimant was injured while working for DPW at Woodville State Hospital (Woodville). Claimant was assisting a patient in the bathroom, and when Claimant attempted to break the patient's fall, the patient fell onto Claimant. (Findings of Fact, Nos. 1–3.) As a result of this injury, Claimant underwent surgery in 1990 for an anterior cervical discectomy and fusion at C5–6, and she could not work for various periods of time between 1989 and 1992. (Findings of Fact, Nos. 4, 8.) During these periods of disability, Claimant received workers' compensation benefits; however, Claimant never received Act 534 benefits in connection with this injury. (Findings of Fact, No. 7.)

On April 12, 1999, while Claimant was employed with DPW at Mayview State Hospital (Mayview), a patient struck Claimant on the back of her neck with his cast, injuring her. (Findings of Fact, Nos. 6, 11.) As a result of this injury, Claimant could not work for various periods of time between April 13, 1999, and September 13, 1999. During these periods of disability, Claimant received Act 534 benefits. (Findings of Fact, No. 12.) On September 13, 1999, Claimant returned to work, and she continued to work in a full-time, full-duty capacity through July 20, 2002. (Findings of Fact, No. 16.)

On July 21, 2002, Claimant again was disabled by neck problems, (Findings of Fact, No. 17; R.R. at 332, N.T. at 19), and, in September 2002, Claimant underwent a second cervical discectomy and fusion at C6–7. Claimant requested Act 534 benefits, alleging that this latest disability was related to her 1999 work injury; however, DPW denied the request. (Findings of Fact, No. 19; R.R. at 4a.) Claimant filed an appeal with DPW's BHA, and a hearing was held before an ALJ.

At the hearing, Claimant testified regarding her 1989, 1999, and 2002 injuries, and the treatment and benefits related to each. Claimant admitted that she never requested Act 534 benefits in connection with her 1989 injury because the secretary and a personnel employee at Woodville told Claimant that she was not eligible for such benefits where her injury did not

---

1. Act of December 8, 1959, P.L. 1718, *as amended*, 61 P.S. §§ 951–952. Section 1 of Act 534 provides, in pertinent part:

    Any employe ... of a State mental hospital ... under the Department of Public Welfare, who is injured during the course of his employment by an act of ... any person confined in such institution ... shall be paid, by the Commonwealth of Pennsylvania, his full salary, until the disability arising therefrom no longer prevents his return

    as an employe of such ... institution at a salary equal to that earned by him at the time of his injury.

    61 P.S. § 951. Act 534 was enacted in order to assure those who undertook employment in certain state institutions that they would be fully compensated in the event that they were disabled as the result of an act of a patient. *Mihok v. Department of Public Welfare*, 670 A.2d 227 (Pa.Cmwlth.1996).

result from the intentional, aggressive act of a patient. (R.R. at 337a–38a, N.T. at 41–43.)

Claimant also submitted a variety of medical evidence to support her position that her anterior cervical discectomy and fusion at C6–7 and her 2002 disability were related to her 1999 injury. Claimant's evidence included the deposition testimony of Howard J. Senter, M.D., who is board-certified in neurosurgery. (R.R. at 233a.) Dr. Senter testified that, although Claimant had some degenerative disc disease at C6–7 as a result of her previous surgery in 1990, she had been asymptomatic. Dr. Senter opined that Claimant's 1999 injury aggravated this condition and caused it to become symptomatic. (R.R. at 248a–50a.)

For its part, DPW submitted an affidavit of recovery from Frank T. Vertosick, M.D., dated September 2, 1999. Dr. Vertosick diagnosed Claimant as suffering from a cervical strain as a result of the 1999 injury and opined that Claimant was fully recovered from that injury and could return to work without limitation as of September 2, 1999. (Findings of Fact, Nos. 14, 15; R.R. at 20a, 21a.)

DPW also submitted the deposition testimony of D. Kelly Agnew, M.D., a board-certified orthopedic surgeon, who reviewed Claimant's medical records and performed an independent medical examination of Claimant on March 19, 2003. (R.R. at 33a, 40a–41a.) Dr. Agnew testified that there is nothing in Claimant's medical history to suggest that her 1999 injury aggravated or accelerated her degenerative disc disease at the C6–7 level. (Findings of Fact, No. 31; R.R. at 68a.) Dr. Agnew further testified that, based on Claimant's history of her 1999 injury, she suffered a cervical strain. (Findings of Fact, No. 27; R.R. at 63a.) Dr. Agnew noted that the diagnostic studies performed after Claimant's 1999 injury did not reveal any trau-matic structural changes, such as an extruded or herniated disc. (R.R. at 64a, 68a.) Dr. Agnew explained that a fusion makes a person more susceptible to degenerative disc changes at levels adjacent to the fused level because more movement is expected at the non-fused levels; thus, Claimant's C6–7 level suffered more wear and tear as a result of her 1990 fusion at C5–6. (Findings of Fact, No. 33; R.R. at 66a–67a.) Dr. Agnew compared Claimant's imaging studies from 1999 to those done in 2002, noting that they revealed a progression of Claimant's degenerative changes to the point where they became symptomatic. (R.R. at 67a; *see, e.g.,* Findings of Fact, Nos. 22–25, 28.) Accordingly, Dr. Agnew opined that Claimant's 2002 C6–7 cervical discectomy was due to degenerative disc changes related to Claimant's surgery at C5–6 performed in 1990. (Findings of Fact, Nos. 30, 34; R.R. at 52a, 66a–67a.) Dr. Agnew also opined that Claimant could return to her previous work duties as of the date of his examination. (R.R. at 70a–71a.)

DPW also offered the testimony of Debra Baird, Mayview's workers' compensation coordinator. Baird, who was a nurse at Woodville at the time of Claimant's 1989 injury, confirmed that the perception at Woodville at that time was that one had to be injured as a result of a patient's *aggressive* act in order to receive Act 534 benefits, but Claimant was injured as a result of breaking a patient's unintentional fall. (R.R. at 345a, N.T. at 70–71.) Baird testified that Claimant's injury file concerning her 1989 injury contains nothing to indicate that Claimant made either a verbal or written request for Act 534 benefits in connection with that injury. Rather, Baird testified that Claimant received work-related disability leave and workers' compensation in connection with the 1989 injury. (R.R. at 341a, N.T. at 56–57.)

After reviewing the conflicting medical evidence, the ALJ determined that DPW's medical evidence "outweighed" Claimant's medical evidence. Accordingly, the ALJ concluded that Claimant's disability from July 21, 2002, through March 18, 2003, was related to her 1989 work injury and not her 1999 work injury. The ALJ also determined that Claimant was not entitled to Act 534 benefits in connection with her 1989 injury, reasoning that her request for such benefits on April 22, 2003, was untimely. (Findings of Fact, No. 9.) Although noting that Act 534 contains no statute of limitations, the ALJ determined that a request for Act 534 benefits must be made within a reasonable time of the injury,[2] and he concluded that Claimant's request, made more than thirteen years after the injury, was time barred. Therefore, the ALJ recommended that Claimant's appeal be denied, and DPW's BHA affirmed that recommendation. Claimant now petitions this court for review of that order.[3]

Claimant first argues that the determination is not supported by substantial evidence and is erroneous because the evidence supports a finding that Claimant's 2002 disability was related to her 1999 injury. In support of her position, Claimant cites her medical expert's impressive credentials and portions of the medical evidence which support such a finding.

Claimant's Act 534 benefits relating to her 1999 injury were terminated upon Claimant's return to work on September 13, 1999. The effect of a termination of benefits is that a claimant has fully recovered from her work-related injury. *Mihok v. Department of Public Welfare*, 670 A.2d 227 (Pa.Cmwlth.1996). Therefore, in order for a claimant to qualify for reinstatement of benefits after those benefits have been terminated, a claimant has the burden of establishing, *inter alia,* a causal connection between her current condition and the prior work-related injury. *Id.* Where the causal connection between the employment incident and the injury is not obvious, the claimant must prove the causal connection through unequivocal medical testimony. *Id.*

Relying on the medical evidence presented by DPW, the ALJ found that Claimant's disability in 2002 was directly related to her 1989 injury. Specifically, the 1989 injury resulted in Claimant having surgery involving a fusion at C5–6 in 1990, which, over time, caused degenerative changes at C6–7 and necessitated Claimant's 2002 cervical surgery at that level.

In advocating her preferred version of the facts, Claimant has simply challenged the ALJ's determinations regarding the credibility of the witnesses and the weight accorded the evidence. However,

---

2. The ALJ relied on *Disability of State Employes Under Heart and Lung Act*, 67 Pa. D. & C.2d 690 (1974). In that opinion, the Commonwealth's Attorney General addressed the statute of limitations for claims filed under the act commonly known as the Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. § 637–638. The Heart and Lung Act has been analogized to Act 534, *see Squire v. Department of Public Welfare*, 696 A.2d 255 (Pa.Cmwlth.1997), and also contains no express statute of limitations. The Attorney General stated that proceedings for Heart and Lung Act benefits could be "maintained

only if begun within a reasonable time, in view of all circumstances of the case...." *Disability of State Employes*, 67 Pa. D. & C.2d at 699.

3. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether necessary findings of fact are supported by substantial evidence. *Mihok.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

the ALJ is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part, and determinations regarding credibility and weight of the evidence are within the province of the ALJ. *See id.* Where, as here, a review of the record reveals that the findings of fact are supported by substantial evidence, this court may not disturb those findings. *See id.* Accordingly, this court must reject Claimant's argument that her 2002 disability is related to her 1999 injury.

■ Claimant next argues that the determination that her claim for Act 534 benefits was untimely is not supported by substantial evidence and is incorrect as a matter of law. The latter argument presents a question of first impression in which we are asked to determine the time limitation for filing a claim for Act 534 benefits.

■ The fact that Act 534 contains no time limitation for filing a claim does not provide a claimant with an unlimited period of time to bring his or her claim for benefits. Indeed, despite the sometimes harsh result, public policy demands that, at some point, "claims should be laid to rest so that security and stability can be restored to human affairs." 2 Standard Pennsylvania Practice § 13.3 (2001). In furtherance of this important public policy, our legislature enacted subchapter B of the Judicial Code,[4] which sets forth time limitations for commencing specific types of civil actions and proceedings. For those types of actions not specifically set forth, section 5527 of subchapter B provides: "[a]ny civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation)[5] must be commenced within six years." 42 Pa.C.S. § 5527. Because Act 534 does not fit specifically into any of the enumerated types of actions or proceedings,[6] we hold that Act 534 proceedings must be commenced within six years of the date of disability, i.e., the date the cause of action arises.[7] *See Pennsylvania National Mu-*

---

4. 42 Pa.C.S. §§ 5521–5535.

5. Section 5531 relates to an action against an attorney or certain actions by the Commonwealth, a county or an institution district; thus, that section is not applicable here.

6. We acknowledge the case of *Hyser v. Allegheny County*, 61 Pa.Cmwlth. 169, 434 A.2d 1308 (1981), which involved an employee's claim for disability benefits under section 1531 of the Act of July 28, 1953, P.L. 723, 16 P.S. § 4531. Section 1531 provides full salary benefits to second class county jail employees who become disabled as a result of violence by an inmate and, like Act 534, contains no statute of limitations. This court held that the appropriate statute of limitations for a section 1531 claim was the six-year period for assumpsit actions formerly found at section 1 of the Act of March 27, 1713, 1 Sm.L. 76, 12 P.S. § 31, which since has been repealed and replaced by sections 5525 and 5527 of the Judicial Code, 42 Pa.C.S. § 5525 (four-year limitation) and 42 Pa.C.S. § 5527 (six-year

limitation). However, because *Hyser* involves a different statute, that case is not controlling here.

7. The statute of limitations begins to run as of the date of disability, rather than the date of injury, because, until the employee has a disability, he or she has no cause of action. *See* Act 534 (stating that the Commonwealth shall pay the employee his or her full salary and related medical and hospital expenses until the disability arising from the compensable injury no longer prevents his or her return as an employee to the employing department, board or institution at a salary equal to that earned by him or her at the time of the injury). The time limitation here is a statute of limitation and not a statute of repose. A statute of limitation is a procedural device which bars recovery on a viable cause of action unless the action is filed within a specified period of time after an injury occurs. *Miller v. Stroud Township*, 804 A.2d 749 (Pa. Cmwlth.2002); Black's Law Dictionary 1450–51 (8th ed.2004). A statute of repose is sub-

tual Casualty Insurance Company v. Nicholson Construction Company, 374 Pa.Super. 13, 542 A.2d 123 (holding that where a civil action is not specifically named within a particular limitations statute, the applicable statute of limitations is 42 Pa.C.S. § 5527), appeal denied, 521 Pa. 605, 555 A.2d 116 (1988).

■ However, Claimant also argues that the ALJ's finding that she did not request Act 534 benefits until April 2003 is not based on substantial evidence. Claimant maintains that the Accident/Illness Report, which she prepared on October 12, 1989, constitutes a timely claim for Act 534 benefits. We do not agree.

The ALJ implicitly rejected Claimant's assertion, finding that Claimant never requested Act 534 benefits in connection with her 1989 injury until April 2003. (Findings of Fact, No. 9.) Indeed, there is no evidence to support Claimant's characterization of the Accident/Illness Report as a claim for Act 534 benefits.[8] Baird testified that she reviewed Claimant's injury file, and it contains nothing to indicate that Claimant made either a verbal or written request for Act 534 benefits in connection with her 1989 injury. (R.R. at 341a, N.T. at 57.) Moreover, Claimant herself admitted that she did not request Act 534 benefits in connection with her 1989 injury, (R.R. at 337a, N.T. at 41), explaining that

the incident report was created only because "we always had to write up the incidents and what happened," (R.R. at 336a, N.T. at 35).

■ Alternatively, Claimant maintains that DPW should be estopped from asserting a time limitation as a defense to Claimant's request for Act 534 benefits because personnel at Woodville informed Claimant that she was not eligible for Act 534 benefits, and she relied on this incorrect information. We cannot agree.

The case of Palmer v. City of Pittsburgh, 9 Pa.Cmwlth. 526, 308 A.2d 179 (1973), is instructive here. In Palmer, in 1964, the widow/claimant of a deceased firefighter, consulted the captain of the firehouse, the chief of the City of Pittsburgh's (City) Bureau of Fire, and an employee of the City's law offices regarding her right to workers' compensation benefits as a result of her husband's death. Each of these individuals informed the claimant that she was not entitled to any benefits. The claimant took no further action until 1970, more than six years after her husband's death, when she filed a fatal claim petition; however, at that time, fatal claim petitions had to be filed within sixteen months of the date of death. The workers' compensation referee/judge awarded death benefits, but the workers'

stantive in nature because it extinguishes a cause of action unless it is brought within a specified period of time after an event occurs, regardless of whether there has yet been an injury. Miller; Black's Law Dictionary 1451 (8th ed.2004). We recognize that these time limitations generally are defined in relation to an event or "injury." However, because of the particular language of Act 534, we again stress that the date of disability is the operative date from which the statute of limitation runs.

8. Arguing that the submission of an incident report constitutes a claim for work-related

benefits, Claimant relies on Baird's testimony that, upon receiving an accident claim, Baird determines whether to submit a claim for Act 534 benefits and/or workers' compensation. Claimant also asserts that Baird's current procedure is the same procedure that was followed in 1989. We note, however, that Claimant fails to cite to the portions of Baird's testimony that allegedly support Claimant's assertions. Moreover, we have reviewed Baird's testimony in its entirety and fail to find such support. We also note that, at the time of Claimant's 1989 injury, Baird was a nurse and not responsible for administering the benefits at issue here.

compensation appeal board reversed, holding that the claim was time barred.

On appeal to this court, the claimant argued that City employees misled her regarding her compensation rights and that the City should be estopped from asserting the sixteen-month time limitation. In considering this argument, this court stated, "courts can permit a claim to be filed after the time prescribed in the statute if fraud or its equivalent is shown, which in this connection includes an unintentional deception. The evidence to support such a claim must be clear and precise, more than of doubtful weight." *Id.* at 182 (citations omitted). The court noted that virtually all of the cases which permitted a claimant to file a late claim under the workers' compensation act involved situations where the claimant was lulled into a false sense of security in that the claimant was led to believe that his or her claim was valid and was being taken care of, with no further action required on his or her part. However, the court also recognized that there could be situations where a claimant might not file a timely claim petition because of misleading actions or statements on the part of a trusted employer as to the invalidity of the claim. While the court noted that an employer might be estopped from pleading the limitation period in situations where the employer misleads an injured employee, the court also recognized that an employer has no affirmative duty to advise the injured employee of his or her rights.[9] Moreover, "informing a claimant from the beginning that he has no claim or that his claim will not be paid is not in itself deceptive or misleading conduct on the part of the employer." *Id.* at 182. Consequently, the court determined that the City's statements to the claimant

did not constitute such fraud or its equivalent necessary to permit the late filing of a fatal claim petition.

Additionally, the court in *Palmer* noted that even if the City's statements were fraudulent, and the claimant were to have an extended period of time based on those fraudulent statements, the claim still would be untimely because the extended period of time does not last indefinitely. In that regard, the court held that the same statutory time limitation of sixteen months should run from the date of the claimant's last conversation with the City's employee regarding compensation. *Id.; see also Workmen's Compensation Appeal Board v. Griffith,* 28 Pa.Cmwlth. 623, 368 A.2d 1371 (1977) (stating that an unintentional deception does not indefinitely preclude the employer from a defense of untimely filing; rather, a claimant is entitled to another period of time equal to that in the statute within which to file his claim and that the period of time begins with the last deceptive conduct or declaration of the employer).

Under *Palmer,* we must conclude that, even assuming Claimant was misinformed[10] and that those statements by DPW employees constitute the necessary fraud or its equivalent permitting Claimant to file a late claim for Act 534 benefits, her claim still would be untimely. By Claimant's own testimony, DPW erroneously informed Claimant "right off the bat" that she was not eligible for Act 534 benefits, and she accepted that. (R.R. at 338a, N.T. at 43.) There is no evidence of any additional similar conversations. Thus, the time limitation for filing an Act 534 claim began to run in October 1989. Claimant

---

9. The court also stated that a public employer has no greater duty than a private employer. *Palmer.*

10. We note the ALJ made no findings concerning Claimant's testimony that she was misinformed.

did not seek Act 534 benefits until April 2003, more than thirteen years later and well beyond the six-year time limitation. Therefore, Claimant is time barred from receiving Act 534 benefits in connection with her 1989 injury.[11]

Accordingly, for the foregoing reasons, we affirm the order of DPW's BHA.[12]

### ORDER.

AND NOW, this 4th day of January, 2005, the April 12, 2004, order of the Department of Public Welfare is hereby affirmed in accordance with the foregoing opinion.

11. Claimant also argues, in the alternative, that her April 2003 claim for benefits was timely filed because it was filed just over a month after she first became aware that her 2002 disability might be related to her 1989 injury, as a result of her examination by Dr. Agnew on March 19, 2003. This argument is irrelevant, however, because it pertains to Claimant's claim for a recurrence. In order to be eligible for benefits on the theory of a recurrence, Claimant must first establish that she was eligible for benefits for her original disability. Because Claimant did not timely seek those benefits and did not establish her right to any original benefits, she cannot now circumvent the statute of limitations under the guise of a recurrence.

12. We clarify, however, that the time limitation for seeking Act 534 benefits is six years, rather than within a "reasonable time," as stated in the ALJ's determination.