Jason Waite, : 
      Petitioner : 
       : 
   v. : 
       : 
State Civil Service Commission : 
(Warren State Hospital, : 
Department of Human Services), :   No. 1254 C.D. 2018
      Respondent :   Submitted: May 7, 2019

BEFORE: HONORABLE ANNE E. COVEY, Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge
     HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY        FILED: May 29, 2019

   Jason Waite (Waite) petitions this Court for review of the State Civil Service Commission's (SCSC) August 16, 2018 order dismissing Waite's appeal and sustaining Appointing Authority Warren State Hospital, Department of Human Services' (Authority) removal of Waite from his regular employment as a psychiatric aide. Waite presents two issues for this Court's review: (1) whether the SCSC erred by finding that the Authority provided Waite with due process of law; and (2) whether the SCSC erred by finding there was just cause for Waite's employment termination. After review, we affirm.

## Background

   On January 16, 2007, the Authority hired Waite and he remained employed until February 1, 2014. Waite was rehired on July 21, 2014 and worked through February 24, 2016. On July 15, 2014, Waite completed his Employee

Emergency Information documentation, listing therein as his emergency contacts his mother and father, who resided at 202-2 Chord Road, Corry, Pennsylvania 16407. Waite also provided an Employee Data Sheet, wherein he stated his mailing address was 202-2 Chord Road, Corry, Pennsylvania 16407. On July 16, 2015, Waite sustained a work-related injury. He subsequently received workers' compensation (WC) benefits and Act 534[1] benefits. Waite returned to work in February 2016 and his WC and Act 534 benefits ceased. On November 21, 2016, Waite informed the Authority that he believed he had sustained a recurrence of his July 16, 2015 work injury (2016 Recurrence Claim).

On November 22, 2016, the Authority's Human Resource (HR) Assistant Lori Klakamp (Klakamp) provided Waite with a toll-free telephone number for the HR Service Center so he could officially change his address on file with HR. Waite told Klakamp he was not concerned about changing his address since he was still receiving the mail sent to his parents' address. Klakamp did not change Waite's address on file because the Authority does not authorize the HR department to make address changes for employees. All employees must call the HR Service Center and make the change themselves. It is an employee's responsibility to change his mailing address and he can do so by telephoning the HR Service Center. The only person authorized to change an employee's address is the employee himself.

The Authority scheduled an Independent Medical Examination (IME) for Waite. On November 23, 2016, Klakamp requested that Waite's medical care group, Medical Group of Corry (Corry Group), complete a Return to Work Status Report. Corry Group completed the Return to Work Status Report, declaring therein

---

[1] Act of December 8, 1959, P.L. 1718, *as amended*, 61 P.S. §§ 951-952. "Act 534 was enacted in order to assure those who undertook employment in certain state institutions that they would be fully compensated in the event that they were disabled as the result of an act of a patient." *DePaolo v. Dep't of Pub. Welfare*, 865 A.2d 299, 302 n.1 (Pa. Cmwlth. 2005).

that Waite could return to work with restricted duties and returned the same to Klakamp. However, the Authority did not honor Waite's return to work with restricted duties because it did not believe Waite had suffered a recurrence of his work-related injury. Between November 21, 2016 and February 24, 2017, Waite did not work. He was paid from his Family and Medical Leave Act[2] (FMLA) and sick, personal and family (SPF) leave, as well as his holiday and anticipated leave.

As of February 25, 2017, Waite had exhausted his WC and Act 534 benefits and/or FMLA/SPF leave, and did not have any more accrued or anticipated leave available. In accordance with the Authority's policy, Waite was responsible for knowing his available leave balance, and he was able to check it from any computer or by calling the Authority to ask. The Authority's Labor Relations Coordinator Heather Heenan (Heenan)[3] informed Klakamp that Waite had no more compensable leave time.

By letter dated March 3, 2017, mailed on March 4, 2017 (Pre-Separation Letter), the Authority notified Waite that he was absent from work without authorization beginning February 25, 2017. The Pre-Separation Letter ordered Waite to report to work immediately, and directed him to contact Heenan by March 13, 2017 to explain the reason for his absences. Heenan mailed the letter by certified and regular mail to the address Waite had listed on the Authority's online information and timekeeping account: 202 Chord Road, Apartment 2, Corry, Pennsylvania 16407. The certified letter was returned to the Authority as unclaimed; however, the letter sent by regular mail was not returned. Heenan never received a response from Waite.

On March 5, 2017, Waite met with Registered Nurse Supervisor Joel Odach (Odach) at the Authority and asked Odach to fax to Heenan a March 3, 2017

---

[2] 29 U.S.C. §§ 2601-2654.
[3] In the Notes of Testimony July 26, 2017 (N.T.), Heenan's name is misspelled as Heenon. However, a review of Heenan's signature and typewritten name confirms the correct spelling as Heenan. *See* N.T. Ex. AA-6.

3

document from Corry Group that stated that Waite could return to work in a limited duty capacity (March 3, 2017 Doctor's Note). Odach faxed the March 3, 2017 Doctor's Note to Heenan.[4] The March 3, 2017 Doctor's Note did not indicate if the limited duty work restrictions were similar to those Waite required after his initial work injury; it did not explain why Waite had not been at work or why he could not come into work; and it did not contain a return to work date.

On March 6, 2017, the Authority mailed Waite a March 3, 2017 letter by certified and regular mail to 202 Chord Road, Apartment 2, Corry, Pennsylvania 16407, informing him that the Commonwealth's WC claims administrator had reviewed his 2016 Recurrence Claim and determined that it was not compensable. The certified letter was returned as unclaimed. The letter sent by regular mail was never returned.

Psychiatric Aide and Union Representative Jason Madonia (Madonia) was in the HR office when he learned that a Pre-Disciplinary Conference (PDC) would be scheduled for Waite. A question arose about whether the Authority had Waite's current mailing address. Madonia knew the address the Authority had on file was not Waite's current address. Madonia advised HR that Waite's current address on file was incorrect; however, he did not provide Waite's current address because although Madonia had been to Waite's current apartment, he was not certain of Waite's specific mailing address. HR asked Madonia if he could get Waite to provide his current address.

---

[4] There is a stipulation on the record that Waite asked his supervisor to fax the document to Heenan. However, Waite's attorney refers to "Jason Logac" as the supervisor, Notes of Testimony July 26, 2017 (N.T.) at 85, and the Authority's counsel refers to "Joel Odach" as the person who faxed the document. N.T. at 86-87. The SCSC's Adjudication refers to both names. *See* Adjudication at 9. Notwithstanding, the inconsistency does not impact the Court's analysis of the issues before it.

Madonia contacted Waite by Facebook messenger and advised him that he may wish to update the address he had on file with the Authority. Waite responded to Madonia that he was receiving his mail and it did not make sense that the Authority needed his new mailing address. Madonia suggested to Waite that he contact the Authority to figure out "the snag" with his address. Waite replied that the Authority was probably just trying to lay the groundwork to terminate his employment.

By March 29, 2017 letter, sent by certified and regular mail to 202 Chord Road, Apartment 2, Corry, Pennsylvania 16407, the Authority notified Waite that he was scheduled for a PDC (PDC Notification). Waite's father, James Waite, signed for the certified mailing. The letter sent by regular mail was not returned. On April 5, 2017, the Authority held a PDC for Waite. Madonia, Heenan, the Authority's Nurse Manager Jeffrey Darling (Darling), and Barbara Johnson (Johnson)[5] attended the PDC. Waite did not attend his PDC, nor did he call the Authority to participate therein. During Waite's PDC, the panel discussed that Waite had not communicated with the Authority since March 2017.

**Procedural History**

On April 13, 2017, the Authority notified Waite that his employment was terminated for unauthorized absence and failure to report when ordered. Waite appealed from his removal to the SCSC. The SCSC held a hearing on July 26, 2017. On August 16, 2018, the SCSC dismissed Waite's appeal and sustained the Authority's removal of Waite effective April 18, 2017. Waite appealed to this Court.[6] On September 28, 2018, the SCSC filed the Certified Record. On November

---

[5] The record does not contain Johnson's title only that she was on the panel to record the PDC.

[6] "Our scope of review is limited to a determination of whether the Commission committed an error of law, whether there has been a violation of constitutional rights, or whether there is

5

5, 2018, Waite filed his brief and what he entitled a Supplemental Record rather than a Reproduced Record.

On January 2, 2019, the Authority filed an Expedited Motion to Strike Waite's Supplemental Record and Brief (Motion to Strike) contending: (1) the Supplemental Record largely consisted of documents that were not admitted into the SCSC hearing record, either because they were not offered or were deemed irrelevant to the matter on appeal; (2) the SCSC did not admit these documents because they pertained to the WC and Act 534 litigation rather than Waite's removal; and (3) Waite's brief similarly focused on his WC and Act 534 claims and the Supplemental Record rather than documents relevant to the Authority's basis for terminating Waite's employment, *i.e.*, time and attendance violations under the Authority's HR Policy 7173.[7]

On January 10, 2019, Waite filed a Reply to the Authority's Motion to Strike. By January 16, 2019 order (Order), this Court granted the Motion to Strike. Specifically, the Court directed: the "supplemental record is stricken[,]" and Waite "shall file an amended brief . . . **removing all references to documents not appearing in the certified record**." Order (emphasis added). On January 28, 2019, Waite filed his amended brief; however, it is virtually identical to his original brief with the exception of deleting all Supplemental Record **citations**. However, the **references to the documents** not included in the certified record remained in Waite's brief.

---

substantial evidence to support the findings of fact necessary to support the adjudication." *Norvell v. State Civil Serv. Comm'n*, 11 A.3d 1058, 1061-62 (Pa. Cmwlth. 2011).

[7] HR Policy 7173 controls absenteeism and time and sick leave abuse. *See* N.T. Ex. AA-10.

6

**Discussion**

Waite first argues that the SCSC erred by finding that the Authority afforded him due process. Initially, the United States Supreme Court declared:

> The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Cleveland v. Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (citations omitted).

Essentially, Waite asserts that despite Madonia's knowledge that Waite's listed address was incorrect and that the March 3, 2017 Doctor's Note contained Waite's correct address, he did not receive his PDC Notification and, thus, no due process.[8] The Authority rejoins that since Waite was notified of the PDC but chose not to attend, he nevertheless received due process.

> It is well settled that the [SCSC] has the inherent power to determine the credibility of witnesses and the value of their testimony. . . . In making its findings, the [SCSC] must base the findings upon substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion.

*McAndrew v. State Civil Serv. Comm'n (Dep't of Cmty. & Econ. Dev.)*, 736 A.2d 26, 31 (Pa. Cmwlth. 1999) (citations omitted). Here, the SCSC expressly determined:

---

[8] This Court has not relied upon the extra-record documents or Waite's arguments related thereto, but rather addresses only those arguments Waite was permitted to include in his amended brief.

7

> [W]e find [Waite's] testimony not credible that he did not receive his PDC Noti[fication]. The [SCSC] fully believes [Waite] was aware of his PDC date and time, but chose not to attend.
>
> [Waite's] own conduct prevented him from presenting his evidence to the PDC panel. Therefore, he cannot now base a denial of due process claim on his own decision not to attend.

SCSC Adjudication at 25.

At the outset, the Authority's Rules, Regulations, and Expectations provide, in relevant part: "As a condition of employment, current address and telephone numbers must be on file in the HR Office and your work unit. You are required to provide changes in name, home address, and telephone number to the HR Office promptly." Notes of Testimony July 26, 2017 (N.T.) Ex. AA-15 at 3 ¶ 23.

With respect to Waite's address, he testified:

Q. [] Waite, your testimony is that at one point in time you lived at 202 Chord Road in Corry, Pennsylvania?

Correct?

A. Correct.

Q. And then you moved to an address of 706, and I can't say it, Conewango Avenue?

A. You did good.

Q. Is that right?

A. That is right.

. . . .

Q. And that was in July of 2016?

A. Yes.

Q. All right.

And in – after July of 2016 when did you move back to the 202 Chord Road address?

A. About three weeks ago.

Q. While you were living at the 706 Conewango Avenue address, who was living at 202 Chord Road?

A. My parents.

Q. And they are who?

A. James and Deanna Waite.

Q. All right.

And they are the same people listed in the documentation as your emergency contact people?

A. Yes.

Q. And they are the same – well, your father is the same person who is listed on a couple of those certified mail receipts that were signed for your mail?

Correct?

A. Correct.

Q. Did you ever talk with him about that?

A. **Every time they got mail for me, they forwarded it down to me.** So there was a point in March that I lost use of my phone, because I didn't have money to pay my bills. So physically talking to anybody was out of the question. But **they would always send me my mail.**

N.T. at 320-322 (emphasis added). This testimony is corroborated by Klakamp's and Madonia's testimony. Klakamp related that, on November 22, 2016, she told Waite, "in order to make an official change of address that he needed to contact the HR [S]ervice [C]enter . . . [a]nd [she] provided him the telephone number[.]" N.T. at 75. Waite responded that "he really was not worried about not receiving his mail because this was his parents' address." *Id.* Klakamp "encouraged him to call as soon as

9

possible because . . . this is the address that would be used until he did update his address." *Id.*

Madonia similarly reported that he had contacted Waite through Facebook messenger to advise him to update his address. He further testified:

> Q. In that same message, did you mention anything at all about the PDC that was going to occur on April 5th of 2017?
>
> . . . .
>
> A. I honestly don't recall whether it was direct or kind of beating around that he may want to look out for something in the mail as far as a PDC goes. I was trying to, I guess, basically use the information I had to try and be a good friend to, you know—I don't know, try and do the right thing I guess.

N.T. at 21-22. Madonia continued:

> [**Waite**] **had said that he was getting his mail** so that didn't make sense. And then after I had kind of pressed the issue, saying it that he might want to figure out what the snag[] is he had then commented, well, they're probably just trying to lay the ground work to terminate me.

N.T. at 23-24 (emphasis added).

The above testimony, coupled with the stipulation that Waite had the March 3, 2017 Doctor's Note faxed to Heenan immediately after the Pre-Separation Letter was sent to Waite, *see* N.T. at 86-87, Waite's father signed the receipt for the PDC Notification, *see* N.T. Ex. AA-10 at 3, and all correspondence was sent to the address Waite provided the Authority as his mailing address, constitute substantial evidence supporting the SCSC's finding that Waite was aware of his PDC's date and time, but chose not to attend. Because the Authority gave Waite "notice and an opportunity to respond," he was afforded all the process he was due. *Loudermill*, 470 U.S. at 546. Accordingly, the SCSC properly determined that the Authority provided Waite due process.

10

Waite next argues that the SCSC erred by finding that there was just cause for his discharge.

> Section 807 of the Civil Service Act [(Act)[9]] provides '[n]o regular employe in the classified service shall be removed except for just cause.' 71 P.S. § 741.807. The Act does not define 'just cause.' The Court has explained that 'just cause for removal is largely a matter of discretion on the part of the head of the department.' *Perry v. State Civil Serv*[.] *Comm*['*n*] *(Dep*['*t*] *of Labor* [*&*] *Industry)*, 38 A.3d 942, 951 (Pa. Cmwlth. 2011). However, '**just cause 'must be merit-related and the criteria must touch upon** [**the employee's**] **competency and ability in some rational and logical manner**.'' *Wei v. State Civil Serv*[.] *Comm*['*n*] *(Dep*['*t*] *of Health)*, 961 A.2d 254, 259 (Pa. Cmwlth. 2008) (quoting *Galant v. Dep*['*t*] *of Env*[*tl.*] *Res*[.], . . . 626 A.2d 496, 498 n. 2 ([Pa.] 1993)). Further, to be sufficient, it 'should be personal to the employee' and render him unfit for his job, 'making dismissal justifiable and for the good of the service.' *Perry*, 38 A.3d at 951. . . . 'Whether the actions of a civil service employee constitute just cause for removal is a question of law fully reviewable by this Court.' *Perry*, 38 A.3d at 951.

*Szablowski v. State Civil Serv. Comm'n (Pa. Liquor Control Bd.)*, 76 A.3d 590, 597 (Pa. Cmwlth. 2013) (emphasis added; footnote omitted). "It is beyond question that, in order to do one's duties, one must be available for work." *Zielinski v. Luzerne Cty. Assistance Office, Dep't of Pub. Welfare*, 528 A.2d 1028, 1029 (Pa. Cmwlth. 1987). "The Commonwealth has the right to have employees present at work to perform needed services. *See* Section 2 of the Act, 71 P.S. § 741.2 ([I]t is the purpose of the Act to promote greater efficiency and economy in the administration of government)." *Zielinski*, 528 A.2d at 1029.

Waite contends that the Pre-Separation Letter stated that he was being investigated for unauthorized time off from work and that he was to report to work or,

---

[9] Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §§ 741.1-741.1005.

if he is unable to do so, to contact Heenan to explain his absences by March 13, 2017. Waite asserts that since he faxed the March 3, 2017 Doctor's Note on March 5, 2017 explaining the reason for his absence, the Authority lacked just cause for his removal. The Authority rejoins that it had just cause for Waite's removal because he violated the Authority's HR Policy 7173 governing time and attendance.

> HR Policy 7173 provides in relevant part:
>
> A. General Policy
>
> All employees are hired to provide full-time services for their scheduled workday. Absenteeism and time abuse effect everyone negatively, resulting in staff shortages, increased costs, use of overtime, reduction in services, and poor morale. **Each employee is accountable for personal attendance**, and managers and supervisors are to maintain an efficient program to control time abuse, absenteeism, facilitate acceptable levels of attendance and ensure that all time away for [sic] the job is accounted for in SAP[10] when not business related. The [Authority] has a critical interest in seeing that employees are in attendance as scheduled, unless utilizing their leave entitlements in an appropriate, authorized fashion.

N.T. Ex. AA-11 at 3 (Section 7173.2) (emphasis added). HR Policy 7173 mandates relative to discipline:

> 1. Each supervisor/manager shall notify the [HR] Officer/Labor Relations Coordinator on the morning of the second day of absence from work of any employee absent without authorization or notification.
>
> 2. A certified letter must be mailed to the absent employee that will advise them of his/her current status, reporting requirements, and penalties for failure to do so (see sample letter).[11] Removals that occur under these circumstances are based upon unauthorized, unreported absences and a failure to report to work as ordered.

---

[10] SAP is not defined in the record.

[11] The sample letter is identical to the Pre-Separation Letter sent to Waite on March 3, 2017.

12

N.T. Ex. AA-11 at 12 (Section 7173.5(F)). Further, HR Policy 7173 states: "If an employee fails to comply with the conditions outlined in the Pre-Separation Letter[,] . . . the employee will be discharged. NOTE: Employees who are physically unable to report to work should not be ordered to do so." *Id.* (Section 7173.5(E)(2)).

Waite's Pre-Separation Letter stated, in relevant part:

You have been absent from work without authorization beginning February 25, 2017 and continue to be carried in an unauthorized status.

You are hereby ordered to report to work immediately. If you believe you are unable to do so, you are ordered to contact [] Heenan at (814) 726-4220 by March 13, 2017, to explain the reason for your absences. Such explanation must be supported by satisfactory documentation.

Failure to report to work as ordered and to contact [] Heenan as ordered, or provide an acceptable reason and satisfactory documentation for your absences will result in disciplinary action up to and including discharge from employment.

N.T. Ex. AA-4 at 1.

Presumably, because he received the Pre-Separation Letter,[12] Waite had Odach fax the March 3, 2017 Doctor's Note to Heenan. However, the Pre-Separation Letter declared in its entirety: "[Waite] is currently unable to return to work. He is unable to lift greater than ten pounds, push, pull, carry items heavier than 10 pounds, climb, bend or squat." N.T. Ex. AP-3. However, under Section 7173.2(B) of HR Policy 7173:

1. Unauthorized Absence

. . . .

b. Employee does not have time to cover absence and is ineligible for any other paid or unpaid leave. NOTE: **In**

---

[12] Waite denies receiving said letter.

**such cases, a doctor's certificate should not be required as such a request would imply that some form of leave will be approved to cover the absence.**

N.T. Ex. AA-11 at 3 (Section 7173.2(B)) (emphasis added). Based on the above provision, Heenan testified that a doctor's note is not acceptable as proof of inability to work because "if the employee has exhausted all form[s] of leave [to] which they are entitled . . . their absence cannot be approved." N.T. at 202.

Waite was ordered to report to work or to contact Heenan to explain the reason for his absences. He did neither. Rather, he sent a doctor's note severely lacking in information. Although the note provided that Waite "was unable to return to work[,]" it listed work restrictions as opposed to a beginning and end date for an inability to work. N.T. Ex. AP-3. Based upon Waite's failure to report to work or contact Heenan, the Authority sent Waite the PDC Notification. The PDC Notification provided:

> This is to advise you an investigation is presently being conducted into the following allegations concerning your conduct as an employee of this organization.
>
> **Details: violation of DHS [HR] Policy 7173, Unauthorized Absence and Failure to Report to Work as Ordered. Specifically, you failed to return to work or to contact [] Heenan by March 13, 2017 to explain the reason for your absences.**
>
> **A [PDC] has been scheduled for Wednesday, April 5, 2017, at 10:00 hours in Room 117, Labor Relations office; South Center Building or by phone at 814-726-4220.** The purpose of the conference is to afford you an opportunity to answer the allegations. The nature of the evidence in support of the allegations will be described to you at that time. You will, at your request, be allowed union representation at the meeting.
>
> Discipline may or may not be imposed, depending on the facts gathered during the investigation. You will be notified, in writing, as soon as possible of the final outcome

14

of the investigation whether or not disciplinary action is taken.

Should you choose not to attend this conference, decisions concerning appropriate action that may be warranted will be made based on the information available.

If you have any questions concerning this matter, contact [Heenan] at extension 4220.

N.T. Ex. AA-6 (emphasis in original). Waite did not attend his PDC and was, thus, removed for his unauthorized absence and failure to return to work as ordered. The above exhibits, coupled with Heenan's testimony constitutes substantial evidence of just cause for Waite's removal. Accordingly, the SCSC properly determined that the Authority had just cause to terminate Waite's employment.

For all of the above reasons, the SCSC's order is affirmed.


_____
ANNE E. COVEY, Judge

15

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jason Waite, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| State Civil Service Commission | : | |
| (Warren State Hospital, | : | |
| Department of Human Services), | : | No. 1254 C.D. 2018 |
| Respondent | : | |

## O R D E R

AND NOW, this 29th day of May, 2019, the State Civil Service Commission's August 16, 2018 order is affirmed.

_____
ANNE E. COVEY, Judge